Luther James **BRADFORD**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Johnny Paul **WASHAM**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Nos. 25626, 25634.

United States Court of Appeals
Fifth Circuit.

June 13, 1969.

Rehearing Denied July 11, 1969.

**468**

Edward Ellington, Jackson, Miss., Ney M. Gore, Jr., Marks, Miss., for appellant Bradford.

Semmes Luckett, Clarksdale, Miss., for appellant Washam.

H. M. Ray, U. S. Atty., Roger M. Flynt, Jr., Asst. U. S. Atty., Oxford, Miss., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge:

Two post-office robberies on September 3, 1965, led to an indictment in January, 1966, of Luther James Bradford, Johnny Paul Washam and others in the Northern District of Mississippi. The first count alleged a conspiracy among all the defendants in violation of Title 18 U.S.C. § 371 "to pass, utter, and publish forged and altered United States Postal money orders with intent to defraud, knowing material signatures thereon to have been false and forged and knowing material alterations to have been fraudulently made thereon, in violation of Title 18 U.S.C. 500." This was the only count in which Bradford was charged.

The second count accused Washam and others of breaking into the Nesbit, Mississippi Post Office with intent to commit larceny in violation of Title 18 U.S.C. §§ 2 and 2115. In the third count Washam and others were charged with stealing from the Nesbit Post Office property belonging to the United States and including certain blank postal money orders of a value in excess of $100.00.

The third and fourth counts made the same charges as counts two and three in connection with the post office at Red Banks, Mississippi.

The jury found Bradford guilty on count one, the conspiracy charge, and found Washam guilty on counts one, two and three. Both defendants appealed.

Eight others besides Bradford and Washam had been named in the conspiracy count and previously tried. There

was ample testimony in this case to prove the conspiracy.

Bradford has been represented by two attorneys in these proceedings. The first filed a brief contending that the evidence was insufficient to prove that Bradford was a member of the conspiracy and that the Government failed to show any agreement on his part to enter into a conspiracy to pass, utter or publish forged money orders with intent to defraud.

While this brief was stricken a few days before the hearing on appeal we have considered these contentions and find no merit in them.

The testimony is uncontradicted that on the night of September 3, 1965, the post office at Nesbit, Mississippi was broken into and 995 money orders were taken. Also stolen were a validating stamp, a limitation control stamp, and a print punch machine used in filling out money orders. The evidence relating to Bradford is limited to events following the theft. Both he and Washam were identified as having been in Huntsville, Alabama, between the ninth and fifteenth of September 1965. Washam registered at the Sands Motel on September 12, 1965, and on September 15, 1965, at the Southland Motel, both of said motels being in Huntsville. Bradford registered on September 9, 1965, at the Southland Motel.

A shoe salesman in Huntsville testified that Bradford bought a pair of shoes from him with a $100.00 money order, which previously had been identified as one stolen from the Nesbit Post Office.

A handwriting expert testified that from comparing the known handwriting of Bradford with the writing on various money orders it was his opinion that the writing of Bradford appeared either on the face or as the endorsement on the back of fourteen of the stolen money orders. He also testified that from a comparison of Washam's signature with questioned signatures on various stolen money orders it was his opinion that twenty eight money orders had the writing of Washam on them. One of these contained the writings of Bradford on the back and Washam on the front.

A fingerprint expert testified that Washam's fingerprints appeared on three of the stolen money orders examined by him, one of which being the one containing the writing of both Bradford and Washam.

■ It is true that "the gist of the offense of conspiracy * * * is agreement among the conspirators * * *."[1] But there is no doubt that in this case a conspiracy existed. Under such circumstances only slight additional evidence is required to connect a defendant with it.[2]

This Court has held that circumstantial evidence alone, if believed by the jury, is sufficient to convict a defendant and must be sustained unless there is no substantial evidence to support it.[3]

■ It is our opinion that there is ample circumstantial evidence to connect Bradford with the conspiracy.

In the brief filed by Bradford's second attorney his conviction is attacked on the following grounds, (1) Bradford was denied a "speedy trial" guaranteed by the Sixth Amendment, (2) the taking of the handwriting examples violated Bradford's Fourth Amendment rights and (3) if the jury had followed the court's instructions it could not have found Bradford guilty.

■ With respect to Bradford's first contention the record reveals that twenty-two months and twenty-five days elapsed between the indictment and the trial. The mere lapse of time, however,

1. United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 207, 85 L.Ed. 128 (1940).

2. Poliafico v. United States, 6th Cir. 1956, 237 F.2d 97, 104 cert. denied 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957).

3. Cohen v. United States, 5th Cir. 1966, 363 F.2d 321, cert. denied 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303 (1966).

is not sufficient to show denial of any right.[4]

The case was set for trial March 16, 1966, at which time Bradford moved for a continuance due to the absence of a witness. At that time his co-defendant, Washam, was an escapee from jail. On March 25, 1966, Bradford was released on his own recognizance. On October 12, 1966, Bradford moved the court that he be furnished the transcript of the testimony of co-defendants who were tried on March 16th. This motion was granted.

The case was again set for trial on November 28, 1966, and on this occasion Bradford failed to appear. A warrant was issued for his arrest and bond set at $5000.00. On January 24, 1967, he was arrested by the United States Marshal in New Orleans, Louisiana.

Postponement at the next setting on March 13, 1967, was due to numerous pending motions filed by Bradford's co-defendant, Washam.

It was not until June 16, 1967, that Bradford filed a motion to quash the indictment and for dismissal due to his being deprived of a speedy trial.

This motion was heard on December 4, 1967, the day the case went to trial. In overruling the motion the trial judge stated the contention that he was deprived of a speedy trial "was not well taken inasmuch as it was impossible to have a trial of these two defendants because of the absence through no fault of the government, of the co-defendant Washam."

■ The delay as outlined above does not appear to have been unnecessary or unreasonable. The government attempted on several occasions to have the case tried. Postponement was due to Bradford's motion for continuance, his failure to appear, Washam's numerous motions and Washam's not being available for trial.

■ Finally there was no showing of any prejudice or that the delay was improperly motivated, which is essential in a contention that the defendant was deprived of his constitutional right to a speedy trial.[5]

For the reasons stated we consider the contention of Bradford that he was denied a sixth amendment right guaranteeing a speedy trial to be without merit.

■ In his third ground for reversal Bradford contends that if the jury had followed the instructions of the court they could not have found him guilty.

The charge stated that to establish "the offense of conspiracy the evidence must show beyond a reasonable doubt:

First, that the conspiracy was formed and existing at or about the time alleged;

Second, that the defendant knowingly and wilfully became a member of the conspiracy;

Third, that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment at or about the time and place alleged; and

Fourth, that such overt act was committed in furtherance of some object or purpose of the conspiracy as charged."

Bradford admits that as there was no objection to the charge it is the law of the case.

The indictment alleged overt act number 12: "On or about September 9, 1965, Johnny Paul Washam, Andrew George and Luther James Bradford rented motel rooms in Huntsville, Alabama".

Bradford states there was no evidence that George ever rented a motel room in Huntsville, Alabama, or that Washam registered until September 12th (three days later). There is, however, evidence that Bradford registered on September 9, 1965, for one night.

4. Fleming v. United States, 1st Cir. 1967, 378 F.2d 502.

5. Fleming v. United States, *supra*.

The trial judge also told the jury in the charge that the proof need not establish with certainty the exact date of the commission of an alleged offense. It is sufficient if "the offense was committed on a date reasonably near the date alleged."

If the jury believed the evidence offered by the government relating to the elements of a conspiracy including the one overt act that Bradford rented a motel room on or about September 9, 1965, then under the charge it could find Bradford guilty of the offense of conspiracy. We find no error.

The final issue raised by Bradford's second counsel, i. e., the taking of handwriting exemplars violated Bradford's Fourth Amendment rights, gives rise to greater concern and requires a remand for a determination of Bradford's motion to suppress the evidence in light of principles discussed below.

As stated above, during the trial a handwriting expert identified Bradford's handwriting on postal money orders which had been introduced as stolen and falsely endorsed. Known writing specimens were used as a basis of comparison, these specimens having been taken from Bradford on September 28, 1965, by postal inspectors. This evidence was objected to as having been obtained in violation of the Fourth Amendment.

The evidence is in conflict as to whether Bradford was under arrest at the time the handwriting samples were taken.

Two postal inspectors testified concerning the circumstances. As to whether he was under arrest, the testimony differs. Inspector White testified he was not under arrest at the time but that the specimen was given voluntarily. On the other hand Inspector Brown testified a warrant had been issued for his arrest and that he voluntarily surrendered himself in Mobile on September 28, 1965. It would appear that both inspectors have in mind the same occasion, although it is not completely clear. Inspector Brown was not asked as whether the handwriting sample was voluntarily given.

■ If Bradford was not under arrest, the exemplars were not admissible unless given voluntarily. Cf. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (April 22, 1969). In United States v. Boukater, 5th Cir. 1969, 409 F.2d 537, we recognized that the giving of a *Miranda* warning supplies strong evidence that consent to a search is voluntarily given. In the present case a cautionary warning was given at the time the samples were taken, but the warning did not come up to *Miranda* standards.[6]

Since we are not able to infer from the giving of the warning that the exemplars were given voluntarily, we must look to other evidence on the issue of voluntariness. We conclude there is insufficient evidence to determine that issue. While Inspector White stated Bradford voluntarily gave the samples, Bradford himself stated in his affidavit filed in March 1966 that the exemplar was not voluntarily given. Inspector Brown was not questioned on this subject. On remand this issue will be a proper subject for determination.

■ If Bradford was under arrest, we hold that exemplars were admissible. In the case of Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court permitted the taking of blood sample from an individual under arrest to determine alcoholic content. It was contended in *Schmerber* that the chemical analysis should be excluded as the product of an unlawful search and seizure in violation of the Fourth and Fourteenth Amendments. While the amendment protects personal

---

6. While this offense was committed before the opinion in *Miranda* it was tried after *Miranda* and under the authority of Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the *Miranda* standard is applicable.

privacy against unwarranted intrusion, the Court held at page 768, 86 S.Ct. at page 1834:

"the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner."

The taking of the blood sample was held justified under the circumstances and taken in a reasonable manner. Therefore it was not a violation of the Fourth Amendment.

The Court likewise held that the blood sampling did not violate the Self-Incrimination Clause of the Fifth Amendment.

Taking handwriting exemplars is analogous to blood analysis and in that connection *Schmerber* at page 764, 86 S. Ct. at page 1832 has this to say:

"both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communication' or 'testimony', but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

In United States v. Iacullo, 7th Cir. 1955, 226 F.2d 788, it was held that a person legally under arrest may be fingerprinted and those fingerprints admitted into evidence without violating the Fourth Amendment.

In Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, the defendant was compelled to put on a blouse which fitted him. The Court held this evidence admissible stating at page 252, 31 S.Ct. at page 6:

"But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."

We hold that the taking of the handwriting exemplars from Bradford is similar to blood sampling and fingerprinting and that if Bradford was under arrest at the time given they were admissible.

If on the other hand he was not under arrest or the exemplars were not given voluntarily, it was error to admit them.

The question of determining the admissibility of the exemplars is not for the jury but for the Judge alone.[7] On remand it is directed that a hearing be had to determine whether Bradford was under arrest at the time the exemplars were given or whether even if he was not under arrest it was a voluntary act on his part. The additional evidence to be presented will be confined to these two issues. The District Court will make such findings of fact on these questions as may be appropriate in the light of the new evidence and the entire existing record. If after this hearing the Court decides to adhere to its decision to admit the exemplars "it will then enter [a] new final [judgment] based upon the record as supplemented by its new findings", thereby preserving the right of appeal. If on the other hand the Court determines that Bradford was not under arrest when the exemplars were given and that such exemplars were not given voluntarily the appellant should be granted a new trial.[8]

The principal ground for reversal urged by Washam is that the trial court erred in not appointing fingerprint and handwriting experts.

---

7. Miller v. United States, 8th Cir. 1966, 354 F.2d 801.

8. United States v. Shotwell Mfg. Co., 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed.2d 234

(1957) ; Campbell v. United States, 1961, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428.

During a motion hearing in the trial judge's chambers on November 28, 1966, Washam's attorney orally moved for the appointment of a handwriting expert. The judge was assured by the U.S. Attorney that no handwriting expert would testify against Washam and the motion was overruled.

During the same hearing Washam's attorney requested the appointment of a fingerprint expert. Upon the request of the judge for information as to the rule on the appointment of experts the U.S. Attorney referred him to Rule 16(a) (2) which provides for inspection by the defendant of reports in the possession of the government.[9] The judge mentioned that the rule referring to the appointment of expert witnesses was Rule 28,[10] however, without hearing discussion thereon the motion was denied.

During the trial which began on December 4, 1967, the government offered a handwriting expert as a witness; Washam's attorney, in chambers called the attention of the judge to the request previously made for the appointment of a handwriting expert. The U.S. Attorney again assured the court that the expert's testimony would concern only the writing of Bradford and would not be used against Washam. Despite that assurance, later in the trial the expert was recalled and in response to questions by the government's attorney testified that Washam was the author of writing on a number of the stolen money orders.

Also during the trial a fingerprint expert was called by the government and Washam's attorney objected to his testifying and in chambers reminded the court of his motion of November 28, 1966, for the appointment of a fingerprint expert. The record[11] reveals that

9. Rule 16(a). "Upon motion of a defendant, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant * * * (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the government."

10. Rule 28. Expert Witnesses and Interpreters.
"(a) Expert Witnesses. The court may order the defendant or the government or both to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. A witness so appointed shall be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any, and may thereafter be called to testify by the court or by any party. He shall be subject to cross-examination by each party. The court may determine the reasonable compensation of such a witness and direct its payment out of such funds as may be provided by law. The parties also may call expert witnesses of their own selection."

11. Pages 393 & 394 of the Record reveal the following:
"Mr. Luckett (Washam's attorney): The defendant, Washam interposes an objection to the use of this witness (government's fingerprint expert) in the prosecution of the case on the grounds that on a prior hearing herein he made known his wishes to the Court that he be furnished an expert who would be able to also examine the document with respect to fingerprints and be in a position to either verify the findings of any government witness or to challenge the findings of any government witness and he was not furnished the services of such an expert.

"I think it was then admitted that he, himself, was unable to pay the cost of such services of hiring an expert himself.

"The Court: Mr. Ray (U. S. Attorney)

"Mr. Ray: If it please the Court, the rules have been changed. I mentioned the Criminal Justice Act. I think it's really Rule 17 of the Criminal Rules of Procedure, and if this—

"As the Court knows, we've been trying to try this man since he escaped. The rules have changed in the meantime, and it comes as a complete surprise to us that he wants an expert at this trial.

the trial judge erroneously thought when the matter was first dealt with that there was no provision for complying with the request for a fingerprint expert and that the furnishing of such services had been authorized for indigent defendants in the interim. He stated that since there had been no further request the objection was overruled. Rule 28 providing for the appointment of experts was in effect on November 22, 1966, at the time of the hearing on these motions, as was the Criminal Justice Act. Thereafter the witness testified that three of the stolen money orders bore the fingerprints of Washam.

It is true that Washam's attorney did not renew his request for the appointment of a handwriting expert during the trial. On the assurance of the U.S. Attorney that the expert would not be used against Washam the attorney withdrew his objection. It may, however, be presumed that had the attorney known that the expert would be used against Washam, he would have renewed the motion, the government's position would have been the same as it was with respect to the fingerprint expert, and the trial court's ruling thereon would have been the same.

The government's case against Washam depended almost entirely upon the testimony of the two experts. It was therefore necessary, if Washam was to combat this evidence, that he have the assistance of other handwriting and fingerprint experts.

As stated in Jacobs v. United States, 4th Cir. 1965, 350 F.2d 571, 573:

> Unquestionably in the proceeding below the defendant, if financially able, would have had the right to call a privately retained psychiatrist as a witness. It is obvious that only his inability to pay for the services of a psychiatrist prevented a proper presentation of his case. The Supreme Court has unmistakably held that in criminal proceedings it will not tolerate discrimination between indigents and those who possess. the means to protect their rights.

Under Rule 28, in order to prevent discrimination between indigents and those with the means to employ experts, it would have been necessary for the trial judge to determine that Washam would not be prejudiced by a refusal to appoint experts. This he did not do. Under such circumstances his denial of the motions resulted in discrimination against an indigent and was clearly error.

It is the government's contention that even if this court finds error in the denial of Washam's motion, there is other evidence sufficient to warrant conviction. While one of the other defendants who pled guilty testified that Washam was in the neighborhood of the Nesbit, Mississippi Post Office the night of the robbery, this is insufficient in our opinion to overcome the damage resulting from the error of not appointing experts. It is clear that to avoid reversal the beneficiary of an error is required to show that it was harmless "beyond a

For this reason we think that he had a duty to make his wishes known to the Court. We think it come too late, and for that reason we oppose the request at this time.

"Mr. Luckett: As I say his request is in the record, if the Court please, and this desire was made known to the Court quite some time ago. It's true it has not been brought again to the attention of the Court, and I can't change that particular fact.

"The Court: At the time when the matter was first dealt with there was no provision for complying with the request as I recall.

"With the change authorizing such services for indigent defendants, there has been no further request.

"Without extenuating circumstances of a serious nature, I must say that the request now comes too late after the trial has opened and after the case is under way. The objection, therefore is overruled."

reasonable doubt." The government, other than saying it is so, has not shown why the error was not prejudicial.

We believe that since expert testimony could have been decisive on all counts the error taints the entire case.

Bradford's case is remanded for further proceedings consistent with this opinion. The conviction of Washam is reversed and remanded, for a new trial.

In light of this substituted opinion motions for rehearing are denied.