[Crim. No. 3553. Fourth Dist., Div. One. Nov. 26, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY ALFREDO RESERVA, Defendant and Appellant.

COUNSEL

J. Perry Langford, under appointment by the Court of Appeal, and Langford, Langford & Lane for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**WHELAN, J.**—Defendant appeals from a judgment imposing sentence following his conviction in a nonjury trial of first degree burglary and his admission of three prior felony convictions.

The burglary was proved, and that an identifiable palm print was left on the sill of the window through which entry was made (the found print). The print matched that of defendant taken by the police on June 27, 1968, after his arrest on the burglary charge. Defendant was arrested because the print found on the windowsill had matched a set of his prints that had been in the police records since June of 1957[1] (the 1957 prints).

### CONTENTIONS ON APPEAL

(a) Defendant's brief on appeal presented only the claim that the arrest of defendant without a warrant required the prosecution to show that the 1957 prints had been legally obtained.

(b) In oral argument, defense counsel raised for the first time on appeal the question whether the mere showing of the existence in the police files of the 1957 prints under defendant's name afforded probable cause to believe they were the prints of the man under whose name they were filed.

### (a)

 The theory propounded by defendant is that the prints taken after his arrest on the burglary charge were inadmissible under the decision in

---

[1] Two of the felony convictions admitted by defendant were in the Superior Court in San Diego in August 1957.

*Davis* v. *Mississippi*, 394 U.S. 721 [22 L.Ed.2d 676, 89 S. Ct. 1394], decided April 22, 1969. Defendant asserts that since his arrest without a warrant was based upon the correspondence between the 1957 prints and the found prints, that arrest was presumed to be illegal until the police could show that the 1957 prints were not themselves the product of an illegal detention; there being no evidence on the subject, probable cause for the 1968 arrest did not exist.

Defendant's counsel first urged this objection on a motion to suppress under section 1538.5, Penal Code, which was denied, and again at trial in September 1968. He thereby anticipated the *Davis* ruling, although the logical basis for the objection had already been adumbrated in *People* v. *Sesslin,* 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321].

The trial judge was not called upon to decide the merits of defendant's contentions, although formal objection was made to the evidence concerning the identity of the June 27, 1968, prints with the found prints.

It is, therefore, the ruling on the motion to suppress that is under attack.

It was stipulated during the hearing on the motion that defendant was arrested on the 1968 charge without a warrant.

The other evidence presented on that motion was that defendant was under arrest when the June 27, 1968, prints were taken and that the police witness who took those prints had compared the 1957 prints with the found prints and had communicated his findings to the officer who later made the arrest.

We must consider whether the holding in *Davis* v. *Mississippi, supra,* 394 U.S. 721, compels reversal.

In *Davis,* not only were the prints obtained while defendant was in formal custody held the product of an illegal detention, but also those obtained earlier in the first stages of the investigation of the crime when fingerprints were taken from a large number of youths of the age group and color of defendant. Said the court in *Davis,* on page 1398: "[T]he general requirement that the authorization of a judicial officer be obtained in advance of detention would seem not to admit of any exception in the fingerprinting context."

It is true that the learned author of the *Davis* opinion did not describe the manner in which authorization of a judicial officer is to be obtained for the purpose of a detention for fingerprinting of someone for whose arrest probable cause does not exist. Perhaps that procedure will be made clear in the process of the gradual unveiling of the edifice of perfect justice in which the high court is engaged.

The officer who placed defendant under arrest in 1968 without a warrant had probable cause to arrest based upon the sameness of the found prints and the 1957 prints.

If we were to assume the 1957 prints were taken following an arrest, there was no evidence such arrest was without a warrant, or as to the existence or lack of probable cause.

In the absence of evidence to the contrary, it must be presumed that the officers (in 1957) regularly and lawfully performed their duties. (*People* v. *Farrara,* 46 Cal.2d 265, 269 [294 P.2d 21]; *People* v. *Beard,* 46 Cal.2d 278, 280 [294 P.2d 29]; *People* v. *Prewitt,* 52 Cal.2d 330, 335 [341 P.2d 1].)

*Davis* v. *Mississippi, supra,* 394 U.S. 721, declares an exclusionary rule; so does *People* v. *Sesslin, supra,* 68 Cal.2d 418. The evidence obtained in violation of a defendant's constitutional immunity from unreasonable search may not be admitted against him in the trial of the offense with which he is charged.

Even if we were to assume that the 11-year-old prints were obtained during an illegal detention, it was not a detention in connection with the crime for which defendant has now been prosecuted. They were not used or attempted to be used as evidence in the trial leading to the judgment appealed from.

*Davis* v. *Mississippi, supra,* 394 U.S. 721, does not pass upon the question whether the prosecution has the burden of showing initially that there was an innocent source for fingerprints antedating the crime under investigation and whose identity with those left by the perpetrator of such crime gives probable cause to arrest.

In *Davis,* the detentions during which the two sets of fingerprints were taken were shown to be illegal and made without probable cause.[2] Likewise, in *People* v. *Sesslin, supra,* 68 Cal.2d 418, the affidavit upon which the warrant was issued was shown by the court to be patently defective.

Defendant, in making his motion to suppress, alleged that it would be based upon the Fourth and Fourteenth Amendments to the federal Constitution. He failed to produce any evidence that the sufficient probable

---

[2]It was conceded by the prosecution in *Davis* that the arrest following which the prints used in evidence were taken was made without a warrant and without probable cause; *a fortiori,* the earlier detention in which the first prints were taken, the circumstances surrounding which were in evidence, lacked probable cause.

cause for arrest was obtained in violation of any constitutional guaranty of his rights.

We hold that a showing only that a set of fingerprints is in the official record of the police does not amount to evidence of illegality in the procurement of the prints that calls for rebuttal by the prosecution.

(b)

■ We reject likewise the contention that the presence in the police records of fingerprints under the name of a certain person does not give the police reasonable grounds to believe the prints are those of the named person for the purpose of establishing probable cause for the arrest of that person when the prints match others found under circumstances reasonably indicating the person making them was implicated in the commission of a felony.

■ The rule contended for by defendant would require that a person actually present at the taking of the record prints communicate his information to the arresting officer.

In the present case, the arresting officer had a duty to make an arrest when he knew that a felony had been committed and had probable cause based upon the comparison of the two sets of prints to believe that defendant had committed it. (*Lees* v. *Colgan,* 120 Cal. 262, 269 [52 P. 502, 40 L.R.A. 355].)

He did not have a duty before using such information to institute an inquiry into the circumstances under which prints had been obtained that had been in the police records for 11 years, or of making a determination on that question, in the absence of any circumstance that would give rise to a suspicion the prints were not those of the person named.

That same police officer, had he waited to obtain a warrant, could have obtained one by presenting an affidavit setting forth the matters contained in the police records. Yet if defendant's theory holds water, the magistrate should issue an arrest warrant upon an affidavit making such a showing only if the affidavit should show also that the affiant had been informed by someone who was present at the time of taking of the circumstances under which the 11-year-old prints had been obtained, and that they were taken from defendant.

■ Evidence inadmissible in a trial on the issue of guilt may, nevertheless, afford probable cause to arrest. (*Brinegar* v. *United States,* 338 U.S. 160 [93 L.Ed. 1879, 69 S.Ct. 1302, 1310]; *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535].)

■ The presence of information concerning a given person in official

police files or records, known to the arresting officer, which gives reason to believe that such person has committed a felony under investigation, affords probable cause to arrest such person. (*People* v. *Stewart,* 189 Cal.App.2d 176 [10 Cal.Rptr. 879].)

A stronger reason could hardly exist if the information is that a fingerprint in such records purporting to be that of a known person matches a fingerprint found at the scene of the crime. (See *People* v. *Gardner,* 71 Cal.2d 843, 849 [79 Cal.Rptr. 743, 457 P.2d 575].)

There would be a situation somewhat similar if the victim of a crime involving an assualt by an unknown person should identify a photograph in police files as that of the assailant. On the basis of such identification shown by affidavit, a warrant might properly issue for the arrest of the person whose photograph it purported to be, without the necessity of obtaining supporting information from a person present when the photograph was taken.

The extent to which existing police fingerprint records speak for themselves has received fullest discussion on the question of the use of prints from out-of-state police records to show a prior out-of-state conviction of a defendant. (5 Wigmore on Evidence (3d ed.) § 1635a, p. 532.) In Wigmore's opinion, such prior conviction may be evidenced by a certificate of the official custodian, properly authenticated, although the personal knowledge of the custodian extends only to the existence of the record and the supposed name of the person whose prints they purport to be.

The method was approved in *People* v. *McKinley,* 2 Cal.2d 133 [39 P.2d 411] (cf. *People* v. *Foster,* 3 Cal.App.2d 35, 42 [39 P.2d 271]).

■ Such prima facie assumption that record fingerprints are those of the person from whom thay purport to have been taken may be indulged by the police among whose records the prints are kept for the purpose of affording probable cause to arrest for a crime subsequently committed.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 21, 1970.