UNITED STATES of America,
Plaintiff-Appellee,

v.

Luther James BRADFORD, Defendant-Appellant.

No. 28477.

United States Court of Appeals,
Fifth Circuit.

July 22, 1970.

Rehearing Denied Sept. 9, 1970.

William Edward Ellington, Jackson, Miss. (Court Appointed), for appellant.

H. M. Ray, U. S. Atty., Oxford, Miss., for appellee.

Before JOHN R. BROWN, Chief Judge, and AINSWORTH and GODBOLD, Circuit Judges.

PER CURIAM:

On the earlier appeal in this case, Bradford v. United States, 413 F.2d 467 (5th Cir. 1969), we remanded for a determination of the validity of the taking of handwriting exemplars from Bradford.

After a full evidentiary hearing the District Court found that the exemplars were given by Bradford to postal inspectors in their offices on September 28, 1965 at which time Bradford was under lawful arrest, and that the giving of the exemplars was a voluntary act on Bradford's part. The court entered a new judgment of conviction.

Bradford makes a two-pronged argument: first, if he was under arrest, the arrest was illegal because the warrant for his arrest was issued without sufficient probable cause, with the result that the exemplars could not be justified under Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), as allowably taken under compulsion from one under arrest; second, if Bradford was not under arrest, the exemplars were not taken voluntarily.

Whether Bradford was or was not under arrest the exemplars were given voluntarily and there is no substantial evidence of any duress or compulsion. Bradford testified to no involuntariness of any kind. In fact, his own version of his role throughout is that he was voluntarily assisting the postal inspectors in an investigation they were making, during which he was neither under arrest nor anticipating arrest.

The warrant was issued in Huntsville, Alabama, on September 23, 1965. Earlier, on September 20, Bradford was voluntarily cooperating with postal inspectors in Mobile, Alabama, where he lived, in their investigative efforts to break a case involving the burglary of a post office and the forgery and passing of stolen money orders. He testified repeatedly and insistently that he gave the exemplars on the 20th. He retreated partially from this to the extent of saying that he could have given exemplars on the 28th, that he was not positive. Lat-

er he returned to his firm version that they were given on the 20th.

It appears that the District Judge accepted as credible the testimony of the postal inspectors. They testified that Bradford's wife called them in Mobile on the 27th, stating that Bradford had heard there was a warrant out for him and desired to surrender to them the following morning at his home. Pursuant to this request they went to his home the next morning, and, after a friendly cup of coffee, Bradford accompanied them to their office,[1] where he voluntarily gave the exemplars and a statement. They did not have, and never had, the warrant. After Bradford gave the exemplars and a statement, a marshal came bringing the warrant and formally arrested Bradford.

Bradford insists none of this occurred, that he and his wife alone went voluntarily to the postal inspectors' office on the 28th and conferred voluntarily with them, and gave them a statement. He says that the inspectors did not come to his home on the 28th, they did not arrest him, and he did not know a warrant existed or that his arrest was even contemplated until they asked him to sign his statement.

If the exemplars were given on the 20th, as Bradford insists, they were voluntary. If given on the 28th, and Bradford was under valid arrest, they were admissible under *Schmerber* whether voluntary or not. This leaves the possibility, urged by diligent counsel, that on the 28th Bradford was under what purported to be lawful arrest but was not lawful because the warrant was invalid, which counsel says, would cause the exemplars to be involuntary. The compulsion, or lack of voluntariness, is said to arise from the fact that *Schmerber* would authorize compulsory giving of exemplars by one under arrest, that Bradford thought he was under arrest, and in this state of mind—thinking he could be compelled (plus his presence in the postal inspectors' office)—his oth-erwise voluntary giving of the exemplars became involuntary.

This will not stand scrutiny. If Bradford was in custody when he gave the exemplars it was not pursuant to the warrant but in response to his own request that he wanted to surrender to the postal inspectors with whom he had been working and with whom he was on relaxed terms. The postal inspectors considered him in their custody in the sense they would not have allowed him to leave, but Bradford's own testimony is that he did not understand he was in custody but considered he was still a helpful volunteer. He could not be under duress from a misunderstanding of the validity of custody if he did not know that he was in custody at all. Also Bradford's description of his own state of mind is that whatever he did was done voluntarily.

Whatever the date on which they were taken, Bradford cannot engender any taint of compulsion to the exemplars.

Affirmed.

---

1. This version is corroborated by Bradford's wife, subsequently divorced from him and now married to another.