[Crim. No. 8428. First Dist., Div. Two. Nov. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN THOMASON, Defendant and Appellant.

## COUNSEL

Jack Morgan for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, J.**—Defendant appeals from judgment entered on his plea of guilty to a violation of Penal Code section 171c, subdivision 2, following the denial of his motion to suppress evidence pursuant to Penal Code section 1538.5. He contends that the evidence used against him should have been excluded as it was obtained from the witness Maxey after a coercive waiver of Maxey's privilege against self-incrimination, as well as in violation of Maxey's *Miranda* and Fourth Amendment rights.

The pertinent facts giving rise to the motion to suppress are revealed in the transcript of the preliminary hearing on which the matter was submitted. By information, defendant was accused of a felony, bringing a loaded firearm on the grounds of a state college without permission of the school authorities (Pen. Code, § 171c, subd. 2) on December 5, 1968. Maxey had been charged with the identical offense on the same day but charges against him were dismissed after he signed an affidavit incriminating defendant. Maxey's testimony on the second day of the preliminary was *substantially identical to the contents of the affidavit, as follows:*

About 1 p.m. on December 5, 1968, Maxey was close to the speaker's platform at a rally on the San Francisco State College campus. From there, in the company of defendant, he proceeded to the Administration Building, along with a crowd of people headed in that direction. Maxey said to defendant: "In case we get lost, I want you to hold my books." Defendant then took Maxey's two notebooks and put them into his brief case. Thereafter, defendant and Maxey, along with the crowd, entered the Administration Building and remained there until everyone was excluded from the building and the doors locked.

About 1:30 p.m., when Maxey saw defendant again outside the building after the scuffle, he noticed that defendant no longer had the brief case. Maxey asked where his books were and defendant indicated that they were probably still in the Administration Building. Maxey found the Administration Building locked, but after indicating to a police officer that he had left his books in a brief case inside the building, Maxey was allowed to enter. Maxey was led down the hall by a police officer to a room on the first floor. The brief case was open and Maxey's notebooks were on top. After Maxey claimed the notebooks, the officers placed him under arrest for violation of Penal Code section 171c, subdivision 2, as a weapon had also been found in the brief case. Maxey was not advised of any of his rights prior to identifying his books. After the arrest, he admitted ownership of the notebooks but denied ownership of the brief case, which bore defendant's initials.

Officer Foley testified that on December 5, 1968, he was on duty at the main entrance of the Administration Building in the San Francisco State College campus. A number of officers were present when the building was stormed by a group of people. The officers closed the building after a crowd of students was backed out of the building with mace and gunshots. When the building had been cleared, the officers noticed a brown brief case in the front lobby. The brief case had been turned over and contained a number of books, a half-cocked .45 pistol and some electronic equipment. The officers took the brief case and its contents to a room on the first floor. When Maxey subsequently appeared to ask for his books and identified them in the brief case, he was arrested. Prior to the arrest, Maxey was not free to leave the building and was not advised of his constitutional rights.

At the preliminary hearing, defendant's counsel moved to exclude Maxey's affidavit and all of his testimony on the same three grounds asserted on this appeal, namely, that it had been obtained as the result of Maxey's coerced waiver of his privilege against self-incrimination, as well as in violation of his *Miranda* rights, and was "fruit of the poisonous tree" because Maxey identified his books while being unlawfully detained in violation of his Fourth Amendment rights.

The first contention is based on Maxey's refusal to testify against defendant on the first day of the preliminary hearing. When Maxey was asked whether on December 5, 1968, he was on the premises of San Francisco State College, he refused to answer on the grounds of his privilege against self-incrimination. On the same ground, Maxey refused to answer whether he had signed the affidavit in question and read it before he signed it.

The court then suggested that if the affidavit was false, Maxey perhaps should be charged with perjury. As Maxey was not represented by counsel,

defendant's counsel indicated, for the record, that previously Maxey had been represented by a private attorney named Hoffman. Thereafter, the court instructed Maxey to answer the question and Maxey indicated that he had read the affidavit and that the signature on the bottom of the affidavit was his. Thereafter, defendant's attorney *voir dired* Maxey and elicited the information that Maxey had been charged with commission of the same felony at the same time and place as defendant. After Maxey indicated that his signing of the affidavit had occurred by advice of the district attorney and his counsel, the following colloquy took place between the court and Maxey:

"THE COURT: Let me ask you: you don't have to answer these questions because I'm going to advise you, give you a little good advice. If you start answering these questions, what's going to happen to you is that this complaint is going to be reinstated against you. Now, the complaint was dismissed, wasn't it? THE WITNESS: Yes, it was. THE COURT: And you were assured they were not going to press the charges against you? THE WITNESS: Right. THE COURT: Now, if you want to answer his questions and say that you were induced to sign it, then they'll reinstate the charge against you. So you'd better take my advice and not counsel for the defense. I'm giving you good advice. MR. OWEN: Q. Since the date that you have signed this affidavit, have you continued to discuss the matter with your counsel? THE WITNESS: A. No, I have not."

The matter was then continued to the following day in order that Maxey could consult with his counsel. When the preliminary hearing was resumed the second day, Maxey was represented by his own counsel, who had been informed of the previous day's occurrences. A fresh record was begun. Maxey, now advised and represented by his own counsel, did not reiterate his refusal to testify on the basis of the privilege against self-incrimination. Maxey admitted that he had voluntarily signed the affidavit with the advice and consent of his counsel and then testified as indicated above.

■ Defendant argues that Maxey's testimony and the affidavit introduced against him were the result of Maxey's compelled and invalid waiver of his privilege against self-incrimination, as the trial court failed to follow the prescribed procedure of Penal Code section 1324· in granting Maxey immunity from prosecution. Even assuming, without conceding, that this argument might have some merit, the matter cannot be of any help to the defendant here. The record clearly indicates that the colloquy between Maxey and the court, wherein the court indicated that the complaint against him would probably be reinstated if he did not testify in accordance with his prior affidavit, occurred on the first day of the preliminary

hearing when Maxey was not represented by counsel. On the second day of the preliminary hearing, an entirely new record was begun. At this time, Maxey was represented by his counsel and failed to raise either the lack of compliance with Penal Code section 1324 or to reiterate his exercise of his privilege against self-incrimination. ■ It is well settled that the privilege against self-incrimination is a purely personal one, solely for the benefit of the witness and cannot be raised by another party (*People* v. *Barker,* 232 Cal.App.2d 178, 183 [42 Cal.Rptr. 651]). It is deemed waived unless invoked (*Rogers* v. *United States,* 340 U.S. 367 [95 L.Ed. 344, 71 S.Ct. 438, 19 A.L.R.2d 378]; *People* v. *Seastone,* 3 Cal.App.3d 60, 68 [82 Cal. Rptr. 907]).

Defendant also argues that Maxey's testimony should have been excluded because it was based on his initial oral admission of the contents of the affidavit which had been secured without first advising Maxey of his *Miranda* rights. Defendant, citing *Morales* v. *New York,* 396 U.S. 102 [24 L.Ed.2d 299, 90 S.Ct. 291], argues that *Miranda* was applicable as immediately after Maxey was readmitted to the Administration Building, he must have been under arrest. It is contended that he could not have been properly detained for custodial questioning on less than probable cause for arrest without violating *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], and *Sibron* v. *New York,* 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889].

We need not reach this question as defendant concedes that he has no standing to raise the *Miranda* issue (*People* v. *Varnum,* 66 Cal.2d 808, 812-813 [59 Cal.Rptr. 108, 427 P.2d 772]). ■ As indicated in *People* v. *Johnson,* 70 Cal.2d 541 [75 Cal.Rptr. 401, 450 P.2d 865], the policy underlying the exclusionary rule based on the Fourth Amendment, prohibition of unreasonable searches and seizures, differs from the Fifth and Sixth Amendment policies underlying *Miranda.* Accordingly, in cases of unlawful searches and seizures, a defendant has standing to object even when his own rights were not violated, while he cannot raise the violation of another person's *Miranda* rights (*People* v. *Johnson, supra*).

■ Next, defendant, relying on *Davis* v. *Mississippi,* 394 U.S. 721 [22 L.Ed.2d 676, 89 S.Ct. 1394], argues that Maxey's initial statement was the result of his detention without probable cause and that thus his subsequent affidavit, based thereon, was inadmissible. *Davis* held that the fingerprints obtained from a defendant while he was detained without probable cause could not be admitted into evidence as the Fourth Amendment applies to the "investigatory stage." Thus, a defendant's detention without probable cause was seen as a "seizure" in violation of the Fourth Amendment.

Although the *Davis* rule has so far been applied only to tangible evidence (handwriting exemplar, *Bradford* v. *United States,* 413 F.2d 467, 471; fingerprints, *People* v. *Reserva,* 2 Cal.App.3d 151 [82 Cal.Rptr. 333]; rifle, *State* v. *Williams,* 153 Mont. 262 [455 P.2d 634]) and not to oral statements, the U.S. Supreme Court said at page 679 [22 L.Ed.2d]: " 'True, fingerprints can be distinguished from statements given during detention. They can also be distinguished from articles taken from a prisoner's possession. Both similarities and differences of each type of evidence to and from the others are apparent. But all three have the decisive common characteristic of being something of evidentiary value which the public authorities have caused an arrested person to yield to them during illegal detention. If one such product of illegal detention is proscribed, by the same token all should be proscribed.' "

Here, however, defendant has not shown that Maxey's detention was unlawful. The officers had found the brief case containing the books and gun before Maxey returned to the Administration Building and asked for his books. Thus, they had reasonable and probable cause to believe that the person who came to claim the books in the brief case was also the owner of the gun and had violated Penal Code section 171c, subdivision 2. Accordingly, the *Davis* rule is not applicable. Even assuming otherwise, the statement identifying the books made by Maxey prior to the arrest is admissible if voluntarily made (cf. *Bradford* v. *United States, supra,* at p. 471). While the giving of *Miranda* warnings is strong evidence of voluntariness, the absence of the warnings here does not indicate involuntariness. Here, there was no evidence that Maxey's identification of the books was anything but the "product of a rational intellect and a free will" (*In re Cameron,* 68 Cal.2d 487, 498 [67 Cal.Rptr. 529, 439 P.2d 633]).

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.