No. 51,066

STATE OF KANSAS, *Appellee*, v. JERRY MITCHELL, *Appellant*.

(602 P.2d 1383)

Opinion filed December 1, 1979.

*Richard A. Benjes,* of Martindell, Carey, Hunter & Dunn, of Hutchinson, argued the cause and was on the brief for the appellant.

*Joseph L. McCarville, III,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Joseph P. O'Sullivan,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by defendant Jerry Mitchell from jury trial convictions of burglary (K.S.A. 21-3715), and felony theft (K.S.A. 21-3701, now 1978 Supp.).

On April 30, 1978, a burglary and felony theft occurred at the

C-K Supply Company in Hutchinson, Kansas. During the burglary, a walk-in safe was broken into with the use of tools taken from another part of the premises. There were indications that the burglar was familiar with the burglarized business. In the rubble around the safe, a slip of paper was found on which some words and numbers had been written. The paper was identified as a form provided by the Hutchinson Job Service Office. It was a form used by individuals seeking jobs to write down relevant information on jobs available. The information on the form referred to a truck driving job in Satanta, Kansas. The police learned that defendant had been one of three applicants for the Satanta job. By search warrant the police secured job applications filled out by defendant at three other businesses. The handwriting on these applications was similar to that on the form found at the burglary scene, but the K.B.I. needed additional handwriting exemplars for a positive identification. An assistant county attorney obtained a court order requiring defendant to prepare additional handwriting exemplars. Defendant complied with the order and the K.B.I. positively identified the handwriting on the job form as that of defendant. Defendant was then charged and arrested on the crimes herein. Defendant sought to suppress the handwriting exemplars and the testimony of the K.B.I.'s handwriting expert as far as it was based on the court-ordered exemplars. The motion was overruled.

Defendant, as his first issue on appeal, contends the district court's denial of his motion to suppress was error. Defendant contends that inasmuch as he had not been charged when the order for exemplars was issued, the court ordering the exemplars was without jurisdiction to enter such an order. No constitutional questions are raised on this point.

In order to understand the circumstances as they existed when the order was entered, we must go into considerable detail. Prior to the order relating to the handwriting exemplars, the State had obtained search warrants for the job applications and a search of defendant's home, car and person.

On or about May 9, 1978, the following affidavit was filed:

"I, Joseph L. McCarville, III, Assistant Reno County Attorney, 27th Judicial District, State of Kansas, being of lawful age and duly sworn upon my oath, depose and state:

"That on the 30th day of April, 1978 in Reno County, Kansas a burglary was reported at C & K Supply, Hutchinson, Kansas to the Hutchinson Police Depart-

ment. Det. John C. Koontz of the Hutchinson Police Department seized as evidence from that burglary some head hairs left on the safe, a walk-in safe that was opened by the burglar and from which removed the loot.

"Now on the 3rd day of May, 1978 at 12:15 P.M. Det. Sgt. Steven G. Bayless of the Reno County Sheriff's Office obtained a Search Warrant from Judge Richard J. Rome for the premises of 928 East 2nd and the car owned by Jerry Mitchell based upon the affidavit which is attached hereto and is hereby incorporated by reference. I believe that the allegations contained in that affidavit are true and was present while Det. Sgt. Bayless swore to their truth. Further, that that affidavit shows probable cause that Jerry Mitchell was the person who committed the burglary at C & K Supply on the 30th day of April, 1978 in Reno County, Kansas.

"Therefore, I respectfully request the Court to issue a Search Warrant for the person of Jerry Mitchell to seize head hairs to be used compared to the head hairs obtained by Det. Koontz at the scene of the burglary at C & K Supply."

Attached to the McCarville affidavit and made a part of it was the following unexecuted "affidavit" of Sergeant Bayless:

"I, Steven G. Bayless, Detective Sgt., Reno County Sheriff's Department, being of lawful age and duly sworn upon my oath, depose and state:

"That on the 16th day of April, 1978, in Reno County, Kansas a burglary at Western Manufacturing Company address Wasp Lane at the old Naval Base was reported and I investigated. I discovered that entry had been gained by forcing a door, that tools belonging to Western Manufacturing had been used to punch a safe containing money and credit cards, that $55.00 in cash was taken, that a Sears and Roebuck microwave oven rotisserie valued at $275.00 was taken, that no finger prints were left on the scene by the perpetrators, that filing cabinets inside the premises were pried and half inch wide pry marks were left from unknown type instrument, the tools used to open the safe were left at the scene and a spit from the rotisserie that was taken was left behind.

"On the 30th day of April, 1978, in Reno County, Kansas a burglary was reported at C & K Supply in Hutchinson, Kansas to the Hutchinson Police Department. In that burglary no fingerprints were left, tools belonged to the business were used to open the safe which was punched, and the tools were left behind, money taken from the safe included $60.00 in change plus change from the coffee and pop machine fund totaling some $70.00 in change, a strip of plaid cloth was left behind on a sharp edge of the safe, and the point of entry was made by forcing the door into the warehouse.

"That I know an individual by the name of Jerry Mitchell who has been convicted for safe burglaries and has the following modus operandi: He usually punches safes once in a while will peel them, usually only takes money, he usually works alone although uses one partner, gains entry to the building wherever it requires the least physical effort such as vents, doors or windows, uses tools belonging to the business if they are available, and leaves them at the scene, and usually does not leave fingerprints by the use of gloves or some other means. Also Mitchell usually has personal knowledge of the location to be burglarized from either having worked there or been inside or having someone that knows the place.

"Jerry Mitchell worked for C & K Supply for three weeks in January of 1978 and

he also worked for Western Manufacturing for three weeks in March of 1978. On the day after the burglary of Western Manufacturing in which $25.00 in change was taken approximately Jerry Mitchell cashed in $27.00 in change at Riverside Bowling Alley in South Hutchinson, Kansas. On the day after the C & K Supply burglary in which approximately $70.00 in change was taken Jerry Mitchell cashed in $76.00 in change at Riverside Bowling Alley in South Hutchinson. Jerry Mitchell was in the vicinity of the Western Manufacturing burglary on the evening of the burglary because he had his car break down down there and made a collect call to the Riverside Bowling Alley in South Hutchinson, Kansas to have someone go down and pick him up."

On May 10, 1978, McCarville filed the following affidavit in support of his motion for the order requiring defendant to produce handwriting exemplars:

"I, Joseph L. McCarville, III, Assistant Reno County Attorney, 27th Judicial District, State of Kansas, being of lawful age and duly sworn upon my oath, depose and state:

"That on or about the 30th day of April, 1978, in Reno County, Kansas, C & K Supply reported to the Hutchinson Police Department that a burglary had occurred and approximately $1,600.00 in cash was taken from their walk-in vault. An investigation by Det. J. C. Koontz of the Hutchinson Police Department revealed that a small slip of paper was found in the debris of the point of entry into the safe. That on this paper were written several letters and numbers which Det. Koontz has compared with known samples of the handwriting of Jerry Mitchell, and based upon Det. Koontz's observation of them he believes that Jerry Mitchell had written them. Det. Koontz contacted Charles Buchanan of the Kansas Bureau of Investigation, Headquarters in Topeka and determined that for a positive determination as to who wrote these letters and numbers two or more pages of handwriting exemplars would be required.

"That I was present on the 3rd day of May, 1978 when Det. Sgt. Steven G. Bayless of the Reno County Sheriff's Department obtained a search warrant from Judge Richard J. Rome based upon an Affidavit a copy of which is attached and hereby incorporated by reference. I believe this affidavit to be true and correct and that it contains allegations sufficient to warrant conclusion that Jerry Mitchell is the person who committed the burglary at C & K Supply.

"Therefore respectively request the Court to issue an Order compelling Jerry Mitchell to provide Det. J. C. Koontz of the Hutchinson Police Department with no less than two pages of handwriting exemplars as directed by Det. Koontz."

Note: The above affidavit mentions a May 3 search warrant. We do not know whether the Bayless affidavit referred to herein is the same as that attached to the May 9 affidavit of McCarville. This is mentioned only to inform that we are aware of the discrepancy of dates. Apparently, there were multiple search warrants issued prior to the handwriting order herein. For our purposes the exact dates of issuance are of no import except that they were prior to the handwriting exemplar order.

On May 10, 1978, Judge Rome issued the following order:

"NOW ON THIS 10th day of May, 1978, the Court having had submitted sworn testimony from which the Court has found that is reasonable to conclude that a crime has been committed and that evidence of the crime may be produced by compelling the giving of handwriting exemplars.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Jerry Mitchell of 928 East 2nd Street, Hutchinson, Kansas shall provide to Det. John C. Koontz of the Hutchinson Police Department no less than two pages of handwriting exemplars as directed by Det. Koontz."

On May 18, 1978, the complaint against defendant was filed and a warrant was issued for defendant's arrest.

Defendant concedes that the May 10, 1978, affidavit would have constituted sufficient probable cause for issuance of a search warrant, but contends the court had no jurisdiction to issue the pre-arrest order for handwriting exemplars. It is his further position that if the court had been without jurisdiction to issue the order, then the handwriting exemplars are, of necessity, not admissible into evidence for any purpose.

This is an issue of first impression before this court, and there are surprisingly few cases on point from other jurisdictions. Most federal cases in the field deal with the right of grand juries to require a witness to provide handwriting exemplars, and are determined on constitutional grounds. These are questionable authority for the issue before us. Illustrative of the rationale of this line of cases allowing such exemplars are:

*United States v. Mara,* 410 U.S. 19, 21-22, 35 L.Ed.2d 99, 93 S.Ct. 774 (1973):

"We have held today in *Dionisio,* that a grand jury subpoena is not a 'seizure' within the meaning of the Fourth Amendment and, further, that that Amendment is not violated by a grand jury directive compelling production of 'physical characteristics' that are 'constantly exposed to the public.' *Ante,* at 9, 10, 14. Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice. See *United States v. Doe (Schwartz),* 457 F.2d 895, 898-899; *Bradford v. United States,* 413 F.2d 467, 471-472; cf. *Gilbert v. California,* 388 U.S. 263, 266-267. Consequently the Government was under no obligation here, any more than in *Dionisio,* to make a preliminary showing of 'reasonableness.' "

and *United States v. Dionisio,* 410 U.S. 1, 13-14, 35 L.Ed.2d 67, 93 S.Ct. 764 (1973):

"But the conclusion that Dionisio's compulsory appearance before the grand jury was not an unreasonable 'seizure' is the answer to only the first part of the

Fourth Amendment inquiry here. Dionisio argues that the grand jury's subsequent directive to make the voice recording was itself an infringement of his rights under the Fourth Amendment. We cannot accept that argument.

"In *Katz v. United States, supra,* we said that the Fourth Amendment provides no protection for what 'a person knowingly exposes to the public, even in his own home or office . . . .' 389 U.S., at 351. The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world."

*United States v. Holland,* 552 F.2d 667 (5th Cir. 1977), is another grand jury handwriting exemplar case, but it approaches the issue from the jurisdictional rather than the constitutional standpoint. However, *Holland* is questionable authority, as the en banc court ordered that the mandate remain undisturbed, but that the opinion of the panel be withdrawn. 565 F.2d 383 (5th Cir. 1978). The withdrawn *Holland* opinion held the lower federal court was a court of limited jurisdiction; hence, it had no authority other than that specifically granted to it by Congress. The inference in *Holland* is that a court of general jurisdiction could have properly issued a pre-arrest order for handwriting exemplars. 552 F.2d at 671.

Grand jury proceedings are unique in nature and cannot truly be compared with proceedings upon complaint.

A case closer on point is *Bradford v. United States,* 413 F.2d 467 (5th Cir. 1969). There defendant's handwriting had been compared with writings on money orders in connection with a charge of conspiracy to pass, utter and publish forged and altered postal money orders. The defendant contended the taking of the handwriting exemplars violated his Fourth Amendment right and they should have been suppressed. The Circuit Court found the evidence was in conflict as to whether the defendant had been under arrest at the time the handwriting exemplars were taken and held:

"We hold that the taking of the handwriting exemplars from Bradford is similar to blood sampling and fingerprinting and that if Bradford was under arrest at the time given they were admissible.

"If on the other hand he was not under arrest or the exemplars were not given voluntarily, it was error to admit them." p. 472.

On remand, the district court found the defendant had been

under lawful arrest and, on the subsequent appeal, the Circuit Court found the writings to have been voluntarily given. 429 F.2d 1275 (5th Cir. 1970). It is unclear whether the rationale of *Bradford* is still viable in light of *Dionisio* and *Mara,* which found no Fourth Amendment application.

The closest case factually to the one before us is *Sanchez v. Attorney General,* 93 N. M. 210, 598 P.2d 1170 (Ct. App. 1979.) Sanchez was under investigation regarding submission of false Medicaid claims. A district court ordered him to produce handwriting exemplars after Sanchez had refused a request by the attorney general to provide the same. Sanchez disobeyed the court order and was brought before the court on contempt charges. The New Mexico Court of Appeals held the district court had no jurisdiction to issue the order. This case is not squarely on point with our case. In *Sanchez* no exemplars had been produced by the court order. The appellate court's ruling, in effect, was to invalidate the order requiring production of the exemplars. The court was not concerned with any other theory or admissibility of already obtained exemplars. The court stated:

"(c) Handwriting exemplars could be compelled if the requirements for a search warrant were met. *Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The authority for a search warrant is stated in Rule of Crim. Proc. 17. Setting aside the question of probable cause, which we do not discuss, we consider the purposes for which a search warrant may be issued.

"Rule of Crim. Proc. 17 (a) states three purposes for which a search warrant may be issued. The investigator's affidavit concluded that the exemplars were for the third purpose—to obtain evidence which 'would be material evidence in a criminal prosecution.' The affidavit, however, *refutes its own conclusion.* The affidavit seeks handwriting exemplars in order to compare the handwriting of Sanchez with handwriting on the false claims. This comparison is desired because the investigator does not know whether Sanchez is involved in the false claims. The affidavit contains nothing indicating Sanchez' handwriting exemplars 'would be' evidence. The requirements for issuance of a search warrant were not met. The court's authority to issue the order compelling handwriting exemplars may not be resolved on the basis that the order was, in effect, a search warrant.

"We have excluded search warrants as a decisional ground in order to emphasize that the issue is the court's authority to compel the handwriting exemplars. The Attorney General does not claim that the court's authority to issue search warrants was, in this case, authority to order the handwriting exemplars." p. 1172.

In the case before us defendant concedes the affidavits filed herein constituted sufficient probable cause for issuance of a search warrant.

There is no provision in the Code of Criminal Procedure authorizing a pre-arrest court order directing a suspect to produce handwriting exemplars, but that is not dispositive of the issue of admissibility of the handwriting exemplars. We have examined the affidavits carefully and find they were sufficient for an arrest warrant to have been issued for defendant. Had defendant been arrested and then the handwriting exemplar order been entered, there would be no question of its propriety. See *Bradford v. United States*, 413 F.2d 467; *State v. Haze*, 218 Kan. 60, 542 P.2d 720 (1975). Prior to the issuance of the order the police knew positively that two crimes (burglary and felony theft) had been committed, and had probable cause to believe defendant had committed them. Instead of seeking defendant's arrest at that point, the court order was sought. The county attorney apparently wanted to be positive defendant had committed the crimes before arresting him. We find no prejudice accruing to defendant by this irregular procedure, nor is any claimed. The police did not acquire anything by the order that they could not have acquired after arrest. Under the circumstances herein, no error is shown in the district court's denial of defendant's motion to suppress.

Defendant's next issue on appeal is whether the district court erred in admitting the testimony of Mr. Caddick, the Satanta employer. Caddick testified that a man identifying himself as Jerry Mitchell from Hutchinson called him inquiring about the truck driving job. As noted in the factual statement given earlier, this was the job that was noted on the job form found at the crime scene. Other testimony was introduced showing defendant was a Hutchinson resident with experience as a truck driver and had used the Hutchinson Job Service Office on prior occasions. *State v. Williamson*, 210 Kan. 501, 504, 502 P.2d 777 (1972), sets forth the general rules relative to determining admissibility in such circumstances as follows:

"Communications by telephone are admissible in evidence where they are relevant to the fact or facts in issue, and admissibility is governed by the same rules of evidence concerning face-to-face conversations except the party against whom the conversations are sought to be used must ordinarily be identified. It is not necessary that the witness be able, at the time of the conversation, to identify the person with whom the conversation was had, provided subsequently identification is proved by direct or circumstantial evidence somewhere in the development of the case. The mere statement of his identity by the party calling is not in itself sufficient proof of such identity, in the absence of corroborating circumstances so as to render the conversation admissible. However, circumstances

preceding or following the conversation may serve to sufficiently identify the caller. The completeness of the identification goes to the weight of the evidence rather than its admissibility, and the responsibility lies in the first instance with the district court to determine within its sound discretion whether the threshold of admissibility has been met. (*State v. Kladis,* 172 Kan. 38, 238 P.2d 522; *State v. Visco,* 183 Kan. 562, 567, 331 P.2d 318; *Kansas Electric Supply Co. v. Dun and Bradstreet, Inc.,* 448 F.2d 647 [10th Cir.], cert. den., 405 U.S. 1026, 31 L.Ed.2d 486, 92 S.Ct. 1289; 29 Am. Jur. 2d, Evidence, §§ 380-386; 31A C.J.S., Evidence, § 188; Anno. 13 A.L.R.2d 1409.)"

Under the rules of law set forth in *Williamson,* the district court did not err in admitting the Caddick testimony.

As his third and final point, defendant challenges the sufficiency of the evidence to sustain his convictions. The test to be applied was recently stated in *State v. Voiles,* 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979), as follows:

"In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt?"

The prosecution's evidence implicating defendant includes: Defendant was a former employee of C-K Supply. The burglar appeared to have an inside knowledge of the place of business. Defendant lived two and one-half blocks from the crime scene. A slip of paper was found in the rubble at the crime scene, with a job title for a truck driver, which was traced to a job offered by Mr. Caddick. Caddick testified a man from Hutchinson with defendant's name had inquired about the job. Defendant was registered at the employment agency as a truck driver. The job slip was written after defendant left the employ of C-K Supply. The K.B.I. document examiner testified he believed the person producing the handwriting exemplars (defendant) was the same person who had written the job slip. Of the over $1,600 taken in the crime, approximately $70.00 was in change. Approximately $70.00 in change had been cashed in at a bowling alley the day after the burglary by defendant and his girl friend. About two and one-half months after the break-in a workman repairing the crime damage found a Sears receipt with defendant's name on it. The receipt was dated between the time defendant had left employment and the time of the burglary.

Defendant relied on an alibi defense.

We are convinced that a rational factfinder could readily have found defendant guilty beyond a reasonable doubt.

No error having been shown, the judgment is affirmed.

FROMME, J., not participating.

HOLMES, J., dissenting.