**Raul LOPEZ, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 24717.**

United States Court of Appeals
Fifth Circuit.

Aug. 4, 1969.

James R. Gillespie, San Antonio, Tex., for appellant.

Ernest Morgan, U. S. Atty., Andrew L. Jefferson, Jr., Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before GODBOLD and SIMPSON, Circuit Judges, and McRAE, District Judge.

SIMPSON, Circuit Judge:

Appellant Lopez and six other persons were indicted for having conspired to steal, receive, sell, and dispose of aviation equipment belonging to the United States in violation of Title 18, U.S.C., Section 371.[1] The jury found Lopez guilty as to the conspiracy count. He subsequently received a twenty-five month sentence with twenty-three of those months suspended under supervision under the "split-sentence" provisions of Title 18, U. S.C., Section 3651.

The defendants were civilian employees at Kelly Air Force Base, San Antonio, Texas, a major maintenance and distribution center for the Air Force. All of the defendants were associated with or had access to the warehouses which stored aviation parts. The modus operandi of the conspirators was to steal aviation parts and deliver them to the San Antonio business establishment of Raymond Speed, a surplus parts dealer. Speed would purchase the goods at below cost and, in turn, sell them to Ralph Thompson who would ultimately distribute the parts.

In order for the plan to succeed, the defendants had to transport the parts from the base to Speed's establishment without detection. Accordingly, the stolen parts were removed from the base by either overloading Speed's truck when it was legitimately on the base or by paying truck drivers who made daily deliveries to the base to haul the goods away.

The only evidence which connected Lopez, an employee in the central receiving building, with the conspiracy was the tes-

---

[1]. The persons indicted under the conspiracy count were Rogerio G. Arocha, Bennie Deese, Miguel M. Gonzales, Juan Martinez, Raul Lopez, Tomez Jimenez, Jr., and Ramiro Gutierrez. Two other persons, Ralph Thompson and Raymond J. Speed were named in the conspiracy count as co-conspirators but were not named as defendants. Prior to trial, two of the co-defendants, Tomez Jimenez, Jr. and Bennie Deese, were granted a severance and the case proceeded to trial as to the appellant and his remaining co-defendants. All but Lopez, the appellant, were also indicted on substantive counts in violation of Title 18, U.S.C., Section 641.

timony of J. U. Trotter. Mr. Trotter was a truck driver who made daily deliveries to the base. During the course of his duties, Trotter became acquainted with most of the defendants, including Lopez. Eventually Trotter was asked by defendant Martinez if he would like to earn some extra money by hauling "some stuff". After conferring with the F.B.I. and agreeing to serve as an informant, Trotter told Martinez that he would haul the "stuff". During the interim between Martinez's initial inquiry and the time Trotter actually hauled the parts, he was contacted by several of the defendants who made further arrangements for Trotter's haul. One of these contacts was with Raul Lopez, the appellant.

Trotter, after identifying Lopez in open court, testified that Lopez had asked to meet him at the "ice house"[2] on East Houston Street. This particular "ice house" was a favorite rendezvous for the conspirators and was frequently used by them to plan their activities. At the meeting, Lopez stated that he would try to make the necessary arrangements if Trotter was needed to haul "some stuff" on the weekends. Trotter explained that Kelly Air Force Base did not normally receive weekend deliveries and that he did not know how Lopez could get him on the base.

The appellant maintains that the trial court erred in denying his motion for a judgment of acquittal because the evidence was insufficient to support the jury's verdict. The appellant claims the evidence was insufficient because (1) there was no evidence that the appellant entered into an agreement with the other conspirators, and (2) if the evidence did prove the existence of a conspiracy it merely proved a separate conspiracy between Lopez and Trotter which was not charged in the indictment.[3] Neither contention is meritorious and we accordingly affirm.

Admittedly the evidence here is slight. However, when, as in this case, the existence of a conspiracy is shown, slight evidence may be sufficient to connect a particular defendant with it. Bradford v. United States, 5 Cir. 1969, 413 F.2d 467; Diaz-Rosendo v. United States, 9 Cir. 1966, 357 F.2d 124, cert. denied 385 U.S. 856, 87 S.Ct. 104, 17 L. Ed.2d 83 (1966). The evidence connecting Lopez with the conspiracy is circumstantial. Circumstantial evidence alone if believed by the jury is sufficient to connect a defendant with the conspiracy. Bradford v. United States, supra; Cohen v. United States, 5 Cir. 1966, 363 F.2d 321, cert. denied 385 U.S. 957, 87 S. Ct. 395, 17 L.Ed.2d 303 (1966).

In circumstantial evidence cases such as this, "the test to be applied on motion for judgment of acquittal and on review of denial of such motion is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude." Harper v. United States, 5 Cir. 1969, 405 F.2d 185, quoting Vick v. United States, 5 Cir. 1954, 216 F.2d 228. Viewing the evidence in the light most favorable to the government, Glasser v. United States, 1941, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.2d 680, we conclude that the jury could reasonably find that Lopez was a member of the conspiracy.

The facts, recited previously, provide a sufficient basis upon which the jury could conclude that Lopez knew of the conspiracy (by meeting with Trotter, who had been previously "hired" by the defendants) and that Lopez intentionally performed an act in furtherance of the conspiracy (by meeting with Trotter and discussing plans to get Trotter on the base during the weekends). If the knowledge of a conspiracy and an intentional act in furtherance thereof can be

---

2. The government informs us in its brief that an "ice house" in San Antonio is similar to beer taverns found in other communities.

3. See Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

proved, the jury may reasonably infer the existence of an; agreement. Badon v. United States, 5 Cir. 1959, 269 F.2d 75, cert. denied 361 U.S. 894, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959). Thus, the appellant's contention that there was no evidence that he agreed to a conspiracy has no merit because there was sufficient evidence to support a reasonable inference of agreement between Lopez and the other defendants.

Similarly, this inference refutes the appellant's alternative contention that the evidence only proved the existence of a conspiracy between himself and Trotter. If, as we have found, the jury could reasonably infer the existence of an agreement between Lopez and the other conspirators, the conclusion that Lopez only entered into an agreement with Trotter would not be a reasonable hypothesis of innocence. Vick v. United States, supra.

Affirmed.