**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel "Danny Blue Eyes", "Billie Blue Eyes" MALATESTA, Jacquelin "Jacquelin Champlin" "Jacquelin Didonna" "Jacquelin Dodaro" "Jackie" Champion, Victor Dodaro, alias "Victor Didonna", Angelo J. Bertolotti, and Vincent Lynch, alias "Vinnie" "Jack", Defendants-Appellants.**

No. 77–5032.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1978.

Rehearing En Banc Granted
Dec. 18, 1978.

Coleman, Circuit Judge, filed a concurring opinion, in part of which Judge Rubin joined.

Michael Brodsky, Asst. Federal Public Defender, Miami, Fla., for Malatesta.

Bernard S. Yedlin, Miami, Fla. (Court-appointed), for Dodaro.

Michael J. Doddo, Miami, Fla. (Court-appointed), for Champion.

Murray M. Silver, Atlanta, Ga., for Bertolotti.

Alan E. Weinstein, Miami Beach, Fla. (Court-appointed), for Lynch.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., John F. Evans, Sp. Atty., U. S. Dept. of Justice, Miami, Fla., Paul J. Brysh, T. George Gilinsky, Sydney M. Glazer, Attys., Appellate Section, Criminal Div., Washington, D. C., for plaintiff-appellee.

Before COLEMAN, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The Racketeer Influenced and Corrupt Organizations statute (RICO), 18 U.S.C. § 1961, *et seq.*, proscribes certain acts performed as part of a pattern of racketeering activities having an effect on interstate commerce. Indictments for its violation follow a pattern too; they are long and complicated, frequently charging a number of defendants. If the prosecution results in a conviction, the appeals follow a third pattern, raising a large number of complex issues, some common to more than one defendant, others unique to a particular defendant. We here consider these patterns and try to abstain from wandering down garden paths.[1]

## I.

This case involves four male defendants and one female defendant, the wife of one of the co-defendants; a sixth defendant, Capotorto, died before trial. All were charged (Count I) with conspiracy to conduct a racketeering enterprise having an effect on interstate commerce in violation of 18 U.S.C. § 1962(d) and (Count II) with carrying out a racketeering enterprise in violation of 18 U.S.C. § 1962(c). The lengthy trial began on November 8, 1976,

---

1. "I too am a rare Pattern. As I wander down the garden paths."

Amy Lowell, Patterns, The Oxford Book of American Verse 530 (1950).

and ended on December 2, 1976. All of the defendants were convicted.[2]

The indictment was 12 pages long. The alleged conspiracy was an agreement "to operate an illegal scheme to obtain money, marijuana and cocaine both inside and outside the State of Florida." Count I charged that the conspiracy embraced a plan to conduct the day-to-day operation of the enterprise through a pattern of racketeering activities that included extortions, kidnappings, and robberies, both to acquire money and supplies of marijuana and cocaine and to force other individuals to become employed by and associated with the defendants' enterprise. A part of the conspiracy was alleged to be the transportation of marijuana to Ohio. Twenty-six overt acts were set forth. Count II charged the same six individuals with engaging in an enterprise that consisted of an illegal scheme to obtain money, marijuana and cocaine through a pattern of racketeering activities in violation of 18 U.S.C. § 1962(c). The pattern was described as eleven specific acts made criminal by Florida law.

■ The evidence at trial, construed most favorably to the government, as it must be on post-conviction review, *Glasser v. United States,* 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, depicts a series of assaults, kidnappings, thefts, robberies, and thuggeries that it is unnecessary to describe in detail. Capotorto, Malatesta and Lynch were involved in most of them. The testimony linked Dodaro with a number of the episodes. There is an issue concerning the sufficiency of the evidence as to Bertolotti and Jacquelin Dodaro, and we will discuss that later.

## II.

*Presentation to Grand Jury of Transcript of Testimony Before Another Grand Jury*

The present indictment was returned by a grand jury empaneled in the Southern District of Florida, sitting in Fort Lauderdale, relying in part on testimony before a grand jury in Miami. The Assistant United States Attorney in Fort Lauderdale told the grand jury that this procedure was being followed to expedite its hearing of the case and that the government would produce any witnesses whom the grand jury desired to hear in person. The defendants urge dismissal of the indictment because of this use of the Miami grand jury proceedings, which they contend violated grand jury secrecy.

■ Rule 6(e) of the Federal Rules of Criminal Procedure prohibits disclosure of matters occurring before the grand jury except when it is directed by the court, is made to the attorneys for the government for use in the performance of their duties, or is made to government personnel deemed necessary to assist an attorney for the government in performance of his duty to enforce federal criminal law. The rule is designed to protect grand jury secrecy and was adopted to implement the traditional reasons for cloaking grand jury proceedings: (1) to prevent the accused from escaping and from tampering with witnesses; (2) to protect the reputation of an accused who is not indicted; (3) to encourage witnesses to appear and speak freely; and, (4) to encourage jurors to engage in uninhibited investigation and deliberation. *See Pittsburgh Plate Glass Co. v. United States,* 1959, 360 U.S. 395, 405, 79 S.Ct. 1237, 1244, 3 L.Ed.2d 1323, 1330 (Brennan, J., dissenting); *United States v. Procter & Gamble Co.,* 1958, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077.

■ The government cannot rely on the thesis that this disclosure of grand jury materials was made to the attorneys for the government for use in the performance of their duties, a disclosure permitted by Rule 6(e). The revelation complained of is not the unveiling of the grand jury transcript to the attorneys for the government, but their reading of it to *another* grand jury. That kind of disclosure, although not sanctioned by Rule 6 without a court order, has been permitted in some circumstances. For

---

2. Malatesta was sentenced to concurrent sentences of twelve years on each count.

example, in *United States v. Garcia,* 2 Cir. 1970, 420 F.2d 309, the court approved the use of one grand jury's minutes by government attorneys before another grand jury to obtain an indictment for perjury and later, in preparation for trial, to assist in the examination of witnesses. There the proceedings before the first grand jury were the predicate for the perjury indictment. Disclosure in such cases is necessary to prevent the obstruction of justice and to assure punishment for the crime. *See, e. g., State v. Richard,* 1898, 50 La.Ann. 210, 23 So. 331, and *Izer v. State,* 1893, 77 Md. 110, 26 A. 282. *See also* Sherry, *Grand Jury Minutes: The Unreasonable Rule of Secrecy,* 48 Va.L.Rev. 668, 675 n. 32 (1962) and Annot., 127 A.L.R. 272, 288 (1940), and cases cited therein. We have ourselves affirmed a conviction in which this procedure was followed. *See United States v. Crippen,* 5 Cir. 1978, 570 F.2d 535. *Cf. United States v. Brumley,* 5 Cir. 1977, 560 F.2d 1268 (prosecution for suborning perjury by grand jury witness). Moreover, a number of cases permit disclosure after the grand jury's deliberations have ended and an indictment has been returned. *United States v. Socony-Vacuum Oil Co.,* 1940, 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129, 1174; *United States v. Alper,* 2 Cir. 1946, 156 F.2d 222, 226.

■ Judicial exceptions to the broad sweep of Rule 6 should not be expanded. It is neither time-consuming nor difficult to obtain a court order permitting disclosure. When the matter is presented to a court, the judge can take into account both the reasons why revelation is considered necessary and the purposes that underly the rule permitting secrecy. Thus, disclosure to another grand jury has been permitted by various district courts. *See In re May 1972 San Antonio Grand Jury,* W.D.Tex.1973, 366 F.Supp. 522, 532. *Compare In re Grand Jury Investigation of Banana Industry,* D.Md.1963, 214 F.Supp. 856, in which the disclosure of the testimony of only those witnesses no longer available was approved; this use is discussed and disapproved in *Garcia, supra. See also* 1 Wright, Federal Practice and Procedure: Criminal § 107, at 177 (1969).

Secrecy of grand jury materials should be protected almost as well by the safeguards at the second grand jury proceeding, including the oath of the jurors, as by judicial supervision of the disclosure of such materials. If, however, as a matter of policy, disclosure to another grand jury is to be broadly sanctioned, that change should be effected by amendment of Rule 6, rather than by court decision. The real problem in later disclosure to another grand jury may lie in possible prosecutorial abuse, such as the use of selected portions of the testimony, or the presentation of a transcript when the witness in person would be unimpressive. So long as the defendant is prevented from discovering the grand jury's minutes, *Pittsburgh Plate Glass Co. v. United States, supra,* and *United States v. Procter & Gamble Co., supra,* the prosecutor's actions remain virtually unchecked. Even court scrutiny after the fact may not always be effective.

■ Although we adopt the view that a court order should have been obtained permitting disclosure to the Fort Lauderdale Grand Jury, it does not follow that the prosecutor's failure to do so requires dismissal of the indictment in the absence of any showing of abuse. *Compare United States v. Braniff Airways, Inc.,* W.D.Tex. 1977, 428 F.Supp. 579, 583–584, in which the court dismissed an indictment relying in part on the fact that the prosecution supplied the indicting grand jury with summaries and excerpts from testimony before a prior grand jury that had conducted an 18-month investigation. In the usual case Rule 6(e) may be adequately enforced by a contempt citation; indeed, it was amended effective July 30, 1977 to provide in part: "A knowing violation of rule 6 may be punished as a contempt of court." *See also United States v. Dunham Concrete Products, Inc.,* 5 Cir. 1973, 475 F.2d 1241, *cert. denied,* 1973, 414 U.S. 832, 94 S.Ct. 65, 38 L.Ed.2d 66, denying dismissal where there was only one instance of a reference to a witness's testimony before a

prior grand jury, and *United States v. Slawik*, D.Del.1976, 408 F.Supp. 190, 209–211, *aff'd*, 3 Cir. 1977, 564 F.2d 90.

▮▮ Violation of Rule 6 by disclosing grand jury testimony to another grand jury does not *per se* invalidate an indictment. We reserve for another day whether that would be the result if there were an abuse of the grand jury process. *See, e. g., United States v. E. H. Koester Bakery Co.*, D.Md.1971, 334 F.Supp. 377, 382. In the present case, the short-cut taken by the prosecutor was a trespass, but it did not impair any substantial rights of the defendants or impugn the integrity of the grand jury proceedings.[3]

## III.

### Challenge to the Charge; Sufficiency of the Indictment

▮ RICO comprises four separate crimes, three substantive offenses and a conspiracy. 18 U.S.C. § 1962. Both the substantive offenses and the conspiracy here charged are defined in section 1962(c), which reaches only persons employed by or associated with an *enterprise* "engaged in, or the activities of which affect, interstate or foreign commerce." Effect on commerce is, of course, the jurisdictional basis for the statute. *See United States v. Hyde*, 5 Cir. 1971, 448 F.2d 815, 839 n. 34, *cert. denied*, 1972, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745, and cases cited therein. Because in RICO, unlike some of the other statutes relying on the commerce clause to impart federal jurisdiction, impact on commerce is set forth as part of the definition of the offense, effect on commerce is a jury issue that must be proved beyond reasonable doubt. *Compare Stirone v. United States*, 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252.

The conspiracy count of the indictment here charged the defendants with conspiring "to be employed by and associated with an enterprise engaged in, and the activities which [sic] affected, interstate commerce." The substantive count charged that the defendants were persons associated with an "enterprise . . . engaged in and the activities which [sic] affected interstate commerce." Telephone calls were neither mentioned among the facts stated as supporting the substantive count nor among the interstate activities alleged in the conspiracy charge to be part of the plan of conspiracy. Although one of the overt acts charged in the conspiracy count consisted of making telephone calls, these calls were not alleged to be interstate. Over the defendants' objection as to their relevancy, evidence was introduced that long distance telephone calls were made to places in other states from a Fort Lauderdale phone listed in the name, "Nick Capotorto," and installed at defendant James Capotorto's address. In charging the jury concerning the acts that would supply the interstate element of the offense, if proved beyond reasonable doubt, the court stated that this essential element could be supplied by proof that the defendants communicated with one another interstate; that, in doing so, they utilized methods of communication involved in interstate commerce; and that proof of *any one* of the transactions or events listed by the court would establish the requisite effect on commerce. The defendants challenge both the admission of the evidence of the telephone calls and the jury charge permitting them to be used as the sole basis for finding interstate impact.

In *Stirone v. United States, supra,* a Hobbs Act case, 18 U.S.C. § 1951, the Supreme Court held that, when effect on in-

---

**3.** Another argument applicable to all defendants is that the indictment should be dismissed because RICO does not proscribe racketeering directed against criminal activity. This appeal to the non-law of the jungle has been repeatedly rejected by us. *United States v. McLaurin*, 5 Cir. 1977, 557 F.2d 1064, 1073, *cert. denied*, 1978, 434 U.S. 1020, 98 S.Ct. 743, 54

L.Ed.2d 767; *United States v. Morris*, 5 Cir. 1976, 532 F.2d 436; *United States v. Hawes*, 5 Cir. 1976, 529 F.2d 472. *See also United States v. Altese*, 2 Cir. 1976, 542 F.2d 104, *cert. denied*, 1977, 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750; *United States v. Cappetto*, 7 Cir. 1974, 502 F.2d 1351, *cert. denied*, 1975, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395.

terstate commerce is an element of a federal offense and the indictment charges only one particular kind of commerce to have been burdened, "a conviction must rest on that charge and not another, *even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened.*" 361 U.S. at 218, 80 S.Ct. at 274, 4 L.Ed.2d at 257–58. (emphasis supplied). There the indictment charged that Stirone had interfered with performance of a contract to supply ready mixed concrete which required *sand* to move in interstate commerce; it contained no other specific charges respecting effect on commerce and no general allegation of the impact of Stirone's activity on commerce. In addition to the evidence about the necessity for transporting sand to make the concrete, the government also adduced evidence that the failure to complete the plant for which the concrete was being provided would interfere with interstate *steel* shipments, and the court charged the jury that conviction might rest on proof *either* that sand used to make the ready mixed concrete had moved in commerce *or* that the concrete itself was used to construct a mill to be used to manufacture articles that would move in interstate commerce. This was held to exceed the indictment: the court could not know whether or not the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill to be later built with the concrete made from the imported sand. It could not be said with certainty that Stirone was convicted solely on the charge made in the indictment. The addition charging interference with steel exports was "neither trivial, useless, nor innocuous."

We dwell at length on *Stirone's* facts and its rationale because of the obvious similarities to the present case. Its full import must, however, be assessed in the light of the Supreme Court's opinion 73 years earlier in *Ex parte Bain*, 1887, 121 U.S. 1, 7 S.Ct.

781, 30 L.Ed. 849. There the Court held that the trial court's striking of terms in an indictment denied the defendant his constitutionally protected right to be tried only upon charges returned by a grand jury. Because the grand jury might have based its indictment upon the terms stricken by the trial judge, this deletion of itself so amended the indictment as to make the conviction invalid.[4] Although *Bain* deals with what the trial court may *delete* from the indictment, and we are concerned here with evidence that allegedly added to it, the problems are related; in each case the issue is whether there may be any variance between the indictment and the evidence proffered, and, if some is allowable, the extent to which a difference may be tolerated without prejudicing the defendant by depriving him either of grand jury protection or of knowledge of the charges sufficient to enable him to prepare a defense. In two cases decided after *Bain* and before *Stirone*, the court held that a variance between proof at trial and the indictment would warrant reversal of a conviction only if the difference actually prejudiced the defendant. *Kotteakos v. United States*, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; *Berger v. United States*, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

Several courts have interpreted *Stirone* as requiring that all but innocuous departures from the indictment be read as constructively amending it, requiring reversal. *See, e. g., United States v. Crocker*, 3 Cir. 1977, 568 F.2d 1049, 1059–60; *Watson v. Jago*, 6 Cir. 1977, 558 F.2d 330, 333–34; *United States v. Goldstein*, 3 Cir. 1974, 502 F.2d 526; *United States v. Somers*, 3 Cir. 1974, 496 F.2d 723, 742–46, *cert. denied*, 1974, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58. We have read *Stirone* differently. Thus, in *United States v. Guthartz*, 5 Cir. 1978, 573 F.2d 225, 227–28, we considered its doctrine to permit evaluation of an alleged deviation between indictment and proof to determine whether the change was prejudicial to the defendant or merely harmless. We found

---

4. However, this *Bain* rule does not require the government to prove every word of the indict-

ment nor forbid the trial court to delete any jot or tittle.

that general statements in the indictment fully advised the defendant of the substance and details of the charged offense.

In *United States v. Hyde, supra,* we sustained a conviction under the Hobbs Act obtained after evidence of interstate acts not charged in the indictment was introduced and mentioned in the charge to the jury because the indictment described "in very broad terms the interstate commerce aspects" of the case, 448 F.2d at 838, and the description of the specific interstate activities was introduced by language indicating that they were examples. *Hyde* is, therefore, authority that, when the indictment charges conduct in general terms and the questioned evidence, though going beyond the indictment, is of a kind clearly encompassed in its accusations, such evidence does not alter the indictment and is admissible.

Although neither *Guthartz* nor *Hyde* fully elaborates the rule, we conclude both that they correctly interpret *Stirone* and formulate this circuit's doctrine: when the indictment charges a violation of a statute in general terms, proof of acts of the kind described, although those acts are not specifically mentioned in the indictment, does not constructively amend it, at least absent a demonstration that this was, or might have been, prejudicial to the defendant.[5] The indictment charges an illegal scheme to engage in interstate activities, and specifies that this was a scheme to obtain money, marijuana and cocaine "inside and outside Florida," and to cause marijuana to be transported to the State of Ohio. We conclude that here, as in *Hyde, supra,* the convictions were "not based on facts outside the scope of the indictment, the defect in *Stirone.*"[6] *United States v. Hyde, supra,* 448 F.2d at 838.

---

**5.** During discovery in this case, the defendants, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, received copies of the records of telephone calls that .the government intended to introduce into evidence. The introduction of this evidence therefore did not surprise the defendants or result in any other prejudice to them.

## IV.

*Sufficiency of the Evidence against Jacquelin Dodaro and Bertolotti*

Defendants Jacquelin Dodaro and Bertolotti, who were convicted only on the conspiracy count, contend that the evidence was insufficient to sustain their convictions. In order to sustain a finding of guilt of criminal conspiracy, the evidence, viewed in the light most favorable to the government, must be such as to permit the trier of fact to find, beyond a reasonable doubt, "that a conspiracy existed, that the accused knew it, and with that knowledge intentionally joined that conspiracy." *United States v. Bright,* 5 Cir. 1977, 550 F.2d 240, 242. (emphasis deleted). However, once the existence of a conspiracy and the defendant's participation in it are both established, slight evidence of the defendant's knowledge of the scheme may be sufficient to sustain the jury's finding that he or she was a member. *E. g., United States v. Evans,* 5 Cir. 1978, 572 F.2d 455, 469; *United States v. Trevino,* 5 Cir. 1977, 556 F.2d 1265, 1268; *United States v. Barnard,* 5 Cir. 1977, 553 F.2d 389, 393; *United States v. Alvarez,* 5 Cir. 1977, 548 F.2d 542, 544. *See United States v. Dunn,* 9 Cir. 1977, 564 F.2d 348, 357 n.21.

It is unnecessary to recount the evidence in detail. Jacquelin Dodaro (then Champion) was present when Victor Dodaro attempted by threats to obtain marijuana from a victim named Holman; before· the party went to the home of another victim, Kacicki, she put a handgun in her purse; later she used a gun to implement Dodaro's order that some of his victims lie on the floor, and she was an active participant in the theft of money and marijuana from Kacicki. The extent of her participation in the events of May 31, 1975, shows that she

---

**6.** Here, as in *Guthartz* and *Hyde,* the general charges were broad enough to embrace the specific acts shown; unlike the indictment in *Stirone,* there was a general allegation of impact on interstate commerce.

was more than a bystander; she voluntarily associated herself with Capotorto and Malatesta in the unlawful conspiracy. *See United States v. Humer*, 5 Cir. 1976, 542 F.2d 254.

Bertolotti's involvement in the conspiracy was established primarily by the testimony of a single witness. According to this testimony, Bertolotti participated in the conspiracy at the time of the threats against, the kidnapping of, and the robbery of one of the victims. Those events involved more than one act of racketeering. Although Bertolotti played a lesser part than his co-defendants, this testimony, if believed by the jury, as it evidently was, sufficed. *Cf. United States v. Elliott*, 5 Cir. 1978, 571 F.2d 880, 906.

## V.

### Effect of Acquittal on State Criminal Charge

RICO requires a racketeering activity. This is defined as an:

> . . . act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year . . . .

18 U.S.C. § 1961(1). Among the overt acts charged in the conspiracy count (Count I) of the indictment is the plot of Lynch and his companions to kidnap and rob Scott Harvey. The actual kidnaping and robbery were also charged as acts of racketeering in the substantive count (Count II). Prior to the federal trial, Lynch was tried in state court on charges of robbing and kidnaping Harvey and found not guilty. At the federal trial, prior to the admission of evidence of the Harvey incident, the court instructed the jury that it might not consider the evidence about the alleged kidnaping and robbery of Harvey with respect to the substantive count; however, it might consider that evidence with respect to the alleged conspiracy because a conspiracy had not been charged in state court.

Even had the crimes charged been the same, federal prosecution after a state acquittal did not place Lynch in double jeopardy. *Rinaldi v. United States*, 1977, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207; *Abbate v. United States*, 1959, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729; *Bartkus v. Illinois*, 1959, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684; *United States v. Lanza*, 1922, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314; *United States v. Vaughan*, 5 Cir. 1974, 491 F.2d 1096. *See also United States v. Wheeler*, 1978, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303; *United States v. Martin*, 5 Cir. 1978, 574 F.2d 1359, 1360; *Hill v. Beto*, 5 Cir. 1968, 390 F.2d 640, *cert. denied*, 1968, 393 U.S. 1007, 89 S.Ct. 491, 21 L.Ed.2d 472. Nor did the state acquittal eliminate the essential predicate of the federal conspiracy charged: a conspiracy to commit a kidnapping reprobated by state law may occur albeit the kidnaping is foiled.

The enumeration of certain classes of state offenses in the section 1961 list of acts of racketeering is solely for definitional purposes. *United States v. Frumento*, 3 Cir. 1977, 563 F.2d 1083, 1087, *cert. denied*, 1978, 434 U.S. 1072, 98 S.Ct. 1256, 1258, 55 L.Ed.2d 775, 776. There is no requirement that a state conviction be obtained where a state offense is part of the racketeering activity charged. Because the United States was not a party in the state proceedings, it is not collaterally estopped from proving in the federal prosecutions facts that the state was unable to prove. *United States v. Frumento, supra.*

*Ashe v. Swenson*, 1970, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, in no way eroded the principle that, for double jeopardy purposes, a state and the federal government are separate parties. *Ashe* itself involved the application of the doctrine of collateral estoppel to successive state prosecutions. In *Rinaldi v. United States, supra*, the Supreme Court recognized that the state and federal government may properly prosecute for the same act.

Dodaro raises a similar contention: he asserts that the prosecution in Florida courts is now barred by the Florida Speedy Trial Rule, Rule 3.191, Florida Rules of Criminal Procedure. Therefore, he speciously concludes the government did not

prove offenses "chargeable under State law" within the meaning of 18 U.S.C. § 1961(1)(A).

 This argument misperceives the function of state law violations in a federal racketeering prosecution. As this court recently observed in *United States v. Brown*, 5 Cir. 1977, 555 F.2d 407, 418 n. 22, *quoting United States v. Revel*, 5 Cir. 1974, 493 F.2d 1, " 'the reference to state law in the federal statute is for the purpose of defining the *conduct* prohibited' and is not meant to incorporate the state statute of limitations or procedural rules." Accordingly, in *Brown*, the court rejected a claim that, in a prosecution under 18 U.S.C. § 1962, in which the acts of racketeering were violations of Georgia law, "one must instruct the jury on the various provisions of state law which would apply if they were being prosecuted in the Georgia courts for the alleged acts of racketeering" such as "the applicable Georgia statute of limitations [or] the Georgia requirement that the testimony of an accomplice must be corroborated." 555 F.2d at 418 n. 22. *See also United States v. Forsythe*, 3 Cir. 1977, 560 F.2d 1127, 1134–1135. We follow *Brown's* path and reject the contention.

## VI.

### *Fairness of the Trial*

Lynch complains of two comments by the trial judge during the trial, and Malatesta complains of the closing argument of counsel for Bertolotti.

During the testimony of one witness, Lynch's counsel repeatedly attempted to impeach the witness by showing him an F.B.I. agent's report of an interview with him. After sustaining a second objection to this procedure the court said, "If you wish to prove that he gave a different statement to Agent McPheters, you can call Agent McPheters."

 Viewing the comment in the context of what had previously happened, it is clear that the jury could not have understood it as placing any sort of burden on the defendant to present evidence. The court was properly concerned that defense counsel was attempting to place the substance of the witness's prior statement before the jury, without introducing the statement as impeachment evidence, by having him look at the statement taken by someone else and commenting upon it. Under Rule 613(b), Fed.R.Evid., once the witness had the opportunity "to explain or deny" the prior statement, Lynch was free to introduce extrinsic evidence of it. The court's suggestion that the F.B.I. agent be called was spontaneous, was invited by defense counsel's persistence in continuing to attempt to show the witness evidence of his prior statement, and was conditioned upon defense counsel's "wish[ing] to prove that [the witness] gave a different statement . . ."

There is no greater substance to the contention that prejudice resulted from the court's remark about the identification of Lynch by witness Kacicki. He was asked whether the man who came to his house on Monday, June 2, 1975 was in the courtroom. He first replied "not that I know of. He appears to be the gentleman in the light coat and the brown shirt, similar looking to that gentleman there." He then stepped down from the witness chair and pointed to "the gentleman in the light coat and brown shirt." When the government asked the court to permit the record to reflect that the witness had pointed to Lynch, the court granted the request, observing, "[t]he jury can decide whether his identification is positive, speculative, imaginative, whatever it might be." A moment later, the court observed that the witness "knows, of course, that he had identified Mr. Lynch."

 The court's reference to the identification of Mr. Lynch was accurate. The fact that an identification is less than positive does not render it inadmissible. *See United States v. Washington*, 5 Cir. 1977, 550 F.2d 320, *cert. denied*, 1977, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105; *United States v. Lewis*, 5 Cir. 1973, 485 F.2d 236, *cert. denied*, 1974, 415 U.S. 980, 94 S.Ct. 1569, 39 L.Ed.2d 876; *United States v. Roberts*, 5 Cir. 1973, 481 F.2d 892.

There is no doubt that the witness pointed to appellant Lynch, thereby identifying

him. The court's reference to this identification was merely a reference to the fact that the witness had pointed to Lynch; the court's remark in no way communicated to the jury that the identification was strong or positive, or removed from the jury's consideration the question of the identity of the man who visited Kacicki.

In his closing argument counsel for Bertolotti, a co-defendant, used the terms "con man" and "hoodlum" once in reference to appellant Malatesta. This reference did not deny Malatesta a fair trial. Even if the prosecuting attorney, instead of co-defense counsel, had made similar, brief references to Malatesta as a "con man" or "hoodlum," a mistrial would not have been required. *See United States v. Windom*, 5 Cir. 1975, 510 F.2d 989, 994, *cert. denied*, 1975, 423 U.S. 863, 96 S.Ct. 121, 46 L.Ed.2d 91. Unflattering characterizations of a defendant do not require a new trial when such descriptions are supported by the evidence. *United States v. Windom, supra*, 510 F.2d at 994; *Walker v. Beto*, 5 Cir. 1971, 437 F.2d 1018.

## VII.

### *Jury Instructions*

We have examined the jury instructions in the light of the various arguments addressed to their alleged errors. They were substantively complete and accurate. Although they did not parrot the requests, they adequately and properly informed the jury. Only two of the objections require special mention here.

Lynch objects that the instructions did not relate properly his defense theory as embodied in a requested instruction. Calling a proposed instruction a "theory of defense," however, does not automatically require that it be given in those words. If the instruction does not concern factual issues properly before the jury or if it is otherwise confusing, it need not be given at all. *United States v. Taglione*, 5 Cir. 1977, 546 F.2d 194; *United States v. Johnson*, 5 Cir. 1976, 542 F.2d 230, 233; *United States v. Castaldi*, 7 Cir. 1971, 453 F.2d 506, 511, *cert. denied*, 1972, 405 U.S. 992, 92 S.Ct. 1263, 1273, 31 L.Ed.2d 460.

Appellant's proposed instruction was, in effect, an appeal to the jury based upon his state acquittals and his argument that what he did should not constitute a federal crime. These were not factual issues that the jury was required to resolve, however, and the instruction was properly denied; it was not essential to the jury's understanding of the case and would have been unnecessarily confusing. *United States v. Johnson, supra; United States v. Castaldi, supra.* To the limited extent that the requested instruction was concerned with the facts of the case, it merely informed the jury that appellant denied doing what the government charged that he did. In the light of the court's complete instructions on the presumption of innocence and the government's burden of proof, the jury was given an adequate understanding of the case without an express instruction that Lynch denied doing the acts charged. *See United States v. Schrenzel*, 8 Cir. 1972, 462 F.2d 765, 772, *cert. denied*, 1972, 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248.

Jacquelin Dodaro objects to the instruction given by the judge regarding the necessary elements to prove conspiracy; she asserts that the judge did not instruct the jury on what the government must prove in the way of knowledge. However, we find that the charge, taken as a whole, clearly stated for the jury the legal principles governing their determination of whether or not Jacquelin Dodaro acted with the intent required for conspiracy.

The trial judge instructed the jury that the evidence must show that each defendant willfully participated in the unlawful plan with the intention of advancing its purpose. Although he refused to add the words "with knowledge of the plan," he did separately and properly define the term "willfully." *See United States v. Fontenot*, 5 Cir. 1973, 483 F.2d 315, 323–24 (essentially the same definition used for phrase "knowingly and willfully"). Moreover, the instruction proposed by the defendant would have been improper because it might have given the impression that specific knowledge of the entire plan was required. In order to obtain a conviction of conspiracy,

the government is required to show only that the defendant acted with full knowledge of the general scope and purpose of the conspiracy. It is not necessary for the defendant to have had knowledge of the entire plan of the conspiracy. *United States v. Becker,* 5 Cir. 1978, 569 F.2d 951, 961.

For these reasons, the convictions appealed from are AFFIRMED.

COLEMAN, Circuit Judge, concurring.

I concur in the judgment and in all that Judge Rubin has written except for the following language [Page 12 of the typewritten draft]: "once the existence of a conspiracy and the defendant's participation in it are both established, *slight evidence* of the defendant's knowledge of the scheme may be sufficient to sustain the jury's finding that he or she was a member (emphasis added)."

I realize that this language, appearing in prior decisions, is binding on us as a panel, but I believe the time has come for judicial re-evaluation of this "slight evidence" formulation. I believe that the true test on appeal is whether *substantial evidence* in the record supports a jury finding of the defendant's knowledge of, and participation in, a conspiracy. I think the "substantial evidence" test is (1) consistent with the case law in this Circuit, (2) is compelled by decisions of the Supreme Court and (3) is also supported by sound policy considerations.

I.

An understanding of the devolution of the "slight evidence" rule in the Fifth Circuit requires re-examination of nearly a half century of case law. The earliest case on point that I have been able to discover is *Tomplain v. United States,* 5 Cir. 1930, 42 F.2d 202, *cert. denied,* 282 U.S. 886, 51 S.Ct. 89, 75 L.Ed. 781 (1930). There, in affirming a conspiracy conviction, the Court stated, "The conspiracy was conclusively established, and but slight evidence connecting the defendants was necessary. If the conflict was resolved in favor of the government, it was sufficient to support the conviction." 42 F.2d at 203. The four paragraph opinion cited no authority in support of the "slight evidence" rule.[1] Forty-three years elapsed before our Court cited *Tomplain* as authority for any proposition. It went unnoticed until *United States v. Perez,* 5 Cir. 1973, 489 F.2d 51, *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). In that case, the Court stated that "[i]t was held long ago by this Court that once the jury has found the existence of a conspiracy (agreement), only slight additional evidence is necessary to connect the defendant with the conspiracy. *Tomplain v. United States,* 5 Cir. 1930, 42 F.2d 202." 489 F.2d at 72. In other words, *Perez* was saying that the "slight evidence" rule has been the law of this Circuit since 1930.

Nevertheless, when one examines the Fifth Circuit cases from the *Tomplain* era

---

1. The full text of *Tomplain* is:

 Before BRYAN and FOSTER, Circuit Judges, and HOLMES, District Judge.

 FOSTER, Circuit Judge.

 Walton Tomplain, Nolan Tomplain, Bartoul Cheramie, and Natilus Alario were convicted on an indictment charging them and eleven others with conspiring to import, possess, and transport intoxicating liquor by means of a boat named the Isabel, and certain trucks and automobiles, in violation of the National Prohibition Act (27 USCA).

 Error is assigned to the refusal of a directed verdict and to the overruling of a motion in arrest of judgment, both based upon the alleged insufficiency of the evidence.

 The record shows positively that the Isabel, loaded with liquor, docked at Harry Bourg's landing on Grand Caillou bayou. A number of men and several automobiles were there, and a quantity of the liquor was unloaded. The vessel, five trucks, and some of the men were captured. The overt acts alleged were sufficiently proved.

 It may be conceded that the evidence connecting the four appellants with the transaction was not as strong as it might have been and was disputed. However, we need not review it, as we cannot say, as a matter of law, there was no evidence at all to go before the jury. The conspiracy was conclusively established, and but slight evidence connecting the defendants was necessary. If the conflict was resolved in favor of the government, it was sufficient to support the conviction. The question presented was essentially for the jury.

 The record presents no reversible error. Affirmed.

and notes the absolute dearth of reliance on *Tomplain* as precedent, it really cannot be said that the "slight evidence" test was the law of this Circuit.[2] In *Beland v. United States,* 5 Cir. 1938, 100 F.2d 289, *cert. denied,* 306 U.S. 636, 59 S.Ct. 485, 83 L.Ed. 1087 (1939), the Court clearly employed a "substantial evidence" test. Beland was a drug conspiracy case. I quote from the reported opinion: "Any *substantial* evidence of knowledge and participation in conspiracy will justify a verdict of guilty. . . . The existence of a conspiracy may be shown by inference. It may be established by circumstantial evidence. If there is any *substantial* evidence before a jury on which to base a conviction, this court will not disturb the verdict and will not inquire into or measure the weight of the evidence." 100 F.2d at 291 (emphasis added and citations omitted).

*Beland* was followed in *Pullin v. United States,* 5 Cir. 1939, 104 F.2d 57, *cert. denied,* 308 U.S. 552, 60 S.Ct. 97, 84 L.Ed. 464 (1939). Significantly, Circuit Judge Foster, the author of the *Tomplain* opinion, was a member of the panel in *Pullin* and joined in that opinion, laying down the "substantial evidence" test. See, also, Judge Foster's opinion in *Copeland v. United States,* 5 Cir. 1937, 90 F.2d 78, in which it was held that to support a conspiracy conviction circumstantial evidence must exclude every other reasonable hypothesis than that of guilt.

It seems quite clear to me that *Tomplain* notwithstanding the "substantial evidence" test thus emerged as the firmly established law of the Fifth Circuit.[3] The later cases reaffirmed this position. *See, e. g., Beland v. United States,* 5 Cir. 1941, 117 F.2d 958, 959, *cert. denied,* 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541 (1941) ("substantial evidence of knowledge and participation will justify a verdict of guilty"); *Badon v. United States,* 5 Cir. 1959, 269 F.2d 75, *cert. denied,* 361 U.S. 894, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959) (substantial evidence of knowledge and participation); *Wood v. United States,* 5 Cir. 1960, 283 F.2d 4 (quoting *Badon* "substantial evidence" formulation); *Wilson v. United States,* 5 Cir. 1963, 320 F.2d 493, 495 (quoting *Beland* "substantial evidence" formulation). The record shows, therefore, that until 1963 this Court tested conspiracy convictions on appeal by the substantial evidence standard.[4]

After another five or six years the "slight evidence" formulation made a new appearance in our cases. In *Bradford v. United States,* 5 Cir. 1969, 413 F.2d 467, in the process of remanding the case of defendant Bradford for other proceedings the opinion stated, "[b]ut there is no doubt that in this case a conspiracy existed. Under such circumstances only slight additional evidence is required to connect a defendant with it." 413 F.2d at 469 (footnote omitted). No case from this Circuit was cited as authority for this proposition. With all deference, I

---

**2.** Other circuits had no illusions as to the meaning of the *Tomplain* "slight evidence" test. *See, e. g., Galatas v. United States,* 8 Cir. 1935, 80 F.2d 15, *cert. denied,* 297 U.S. 711, 56 S.Ct. 574, 80 L.Ed. 998 (1936) (slight evidence connecting a defendant may still be substantial and therefore sufficient to sustain a conspiracy conviction); *United States v. Goldman,* 2 Cir. 1941, 118 F.2d 310, *cert. denied,* 313 U.S. 588, 61 S.Ct. 1109, 85 L.Ed. 1543 (1941) ("ample proof" of the conspiracy).

**3.** For other cases of this Circuit dealing generally with conspiracies, *see, e. g., Duke v. United States,* 5 Cir. 1956, 233 F.2d 897; *Jolley v. United States,* 5 Cir. 1956, 232 F.2d 83; *Owens v. United States,* 5 Cir. 1955, 221 F.2d 351; *United States v. Hood,* 5 Cir. 1953, 200 F.2d 639, *cert. denied,* 345 U.S. 941, 73 S.Ct. 832, 97 L.Ed. 1367 (1953); *Baker v. United States,* 5 Cir. 1946, 156 F.2d 386, *cert. denied,* 329 U.S. 763, 67 S.Ct. 123, 91 L.Ed. 657 (1946); *Burk v.*

*United States,* 5 Cir. 1943, 134 F.2d 879; *Kopald-Quinn & Co. v. United States,* 5 Cir. 1939, 101 F.2d 628, *cert. denied sub nom., Ricebaum v. United States,* 307 U.S. 628, 59 S.Ct. 835, 83 L.Ed. 1511 (1939).

**4.** Cases such as *Wilson* and *Beland* have been cited on other occasions by our Court as authority for various propositions. *See, e. g., United States v. Mendez,* 5 Cir. 1974, 496 F.2d 128 (knowledge and participation must be proven); *United States v. Jacobs,* 5 Cir. 1971, 451 F.2d 530, 535 n. 7, *cert. denied sub nom. Kastenbaum v. United States,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972) (conspiracy often may be proven only by inferences drawn from circumstantial evidence); *Henderson v. United States,* 5 Cir. 1968, 390 F.2d 871 (record sufficient to sustain conspiracy convictions). Nothing in such cases repudiated the "substantial evidence" test.

think this view of the law is wholly wrong. I believe that as in all criminal cases the burden on the government in prosecutions for conspiracy is to produce evidence of such substantiality as to justify a reasonably minded jury in believing beyond a reasonable doubt that the defendant was, in fact, connected with the conspiracy.

*Lopez v. United States*, 5 Cir. 1969, 414 F.2d 909, was the second case to employ the "slight evidence" formula. The *Lopez* Court relied upon *Bradford* to support its conclusion,[5] but the Court also indicated its awareness of the substantial evidence test when it cited *Badon v. United States, supra*, in its discussion of the jury's function. 414 F.2d at 911–12.

Nevertheless, subsequent decisions have seized upon the magic words "slight evidence" and have relied upon *Bradford*[6] and *Lopez*[7] for support of this theory of appellate review in conspiracy cases. Once the

floodgates were thus opened, other cases simply relied on the progeny of *Bradford* and *Lopez*.[8] Even so, while the "slight evidence" flood inundated the plains of the Fifth Circuit, a few cases still recognized the correctness and vitality of the "substantial evidence" test. *See, e. g., United States v. Salinas-Salinas*, 5 Cir. 1977, 555 F.2d 470, 472–73; *United States v. Goodson*, 5 Cir. 1974, 502 F.2d 1303, 1305–06; *United States v. Menichino*, 5 Cir. 1974, 497 F.2d 935; *United States v. Amato*, 5 Cir. 1974, 495 F.2d 545, 549–50, *cert. denied*, 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 286 (1974).

Our Court applied the "slight evidence" test so often and so ritualistically that by 1975 some district judges were led to believe that the government only had to adduce slight evidence at trial in order to connect a defendant to a conspiracy and they so charged juries. However, we immediately corrected that error. *See, e. g.,*

5. "Admittedly the evidence here is slight. However, when, as in this case, the existence of a conspiracy is shown, slight evidence may be sufficient to connect a particular defendant with it. *Bradford v. United States*, 5 Cir. 1969, 413 F.2d 467; . . . ." 414 F.2d at 911.

6. Among the cases which have cited *Bradford* for the "slight evidence" test have been *United States v. McGann*, 5 Cir. 1970, 431 F.2d 1104, 1107, *cert. denied sub nom. Pruitt v. United States*, 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 821 (1971); *United States v. Rodriguez*, 5 Cir. 1974, 498 F.2d 302, 312; *United States v. Reynolds*, 5 Cir. 1975, 511 F.2d 603, 607.

7. *Lopez* has clearly made the most significant contribution to our adherence to "precedent". *See, e. g., United States v. McGann*, 5 Cir. 1970, 431 F.2d 1104, 1107, *cert. denied sub nom. Pruitt v. United States*, 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 821 (1971); *United States v. Warner*, 5 Cir. 1971, 441 F.2d 821, 830, *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971); *United States v. Morado*, 5 Cir. 1972, 454 F.2d 167, 175, *cert. denied*, 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972); *United States v. Fontenot*, 5 Cir. 1973, 483 F.2d 315, 321; *United States v. Lee*, 5 Cir. 1973, 483 F.2d 968, 969; *United States v. Wilson*, 5 Cir. 1974, 500 F.2d 715, 727, *cert. denied sub nom. Levin v. United States*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975); *United States v. Sanchez*, 5 Cir. 1975, 508 F.2d 388, 392, *cert. denied*, 423 U.S. 827, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975); *United States v. Wayman*, 5 Cir. 1975, 510 F.2d 1020, 1026, *cert. denied sub nom. Moore v. United States*, 423 U.S. 846, 96 S.Ct. 84, 46

L.Ed.2d 67 (1975); *United States v. Reynolds*, 5 Cir. 1975, 511 F.2d 603, 607; *United States v. Prince*, 5 Cir. 1975, 515 F.2d 564, 567, *cert. denied sub nom. Craft v. United States*, 423 U.S. 1032, 96 S.Ct. 563, 46 L.Ed.2d 406 (1975); *United States v. James*, 5 Cir. 1976, 528 F.2d 999, 1012, *cert. denied sub nom. Henry v. United States*, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976); *United States v. Crockett*, 5 Cir. 1976, 534 F.2d 589, 594; *United States v. Bass*, 5 Cir. 1977, 562 F.2d 967, 969.

8. *See, e. g., United States v. Evans*, 5 Cir. 1978, 572 F.2d 455, 469; *United States v. Trevino*, 5 Cir. 1977, 556 F.2d 1265, 1268; *United States v. Barnard*, 5 Cir. 1977, 553 F.2d 389, 393; *United States v. Alvarez*, 5 Cir. 1977, 548 F.2d 542, 544; *United States v. Nicholson*, 5 Cir. 1976, 525 F.2d 1233, 1237, *cert. denied*, 425 U.S. 972, 96 S.Ct. 2170, 48 L.Ed.2d 795 (1976); *United States v. Prieto*, 5 Cir. 1974, 505 F.2d 8, 11; *United States v. Smith*, 5 Cir. 1974, 504 F.2d 560, 562, n. 2; *United States v. Maslanka*, 5 Cir. 1974, 501 F.2d 208, 216, *cert. denied sub nom. Knight v. United States*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975); *United States v. Miller*, 5 Cir. 1974, 500 F.2d 751, 763, *rev'd on other grounds*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *United States v. Perez*, 5 Cir. 1974, 489 F.2d 51, 72, *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1975); *United States v. Edwards*, 5 Cir. 1974, 488 F.2d 1154, 1157; *United States v. Iacovetti*, 5 Cir. 1972, 466 F.2d 1147, 1154, *cert. denied*, 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973).

*United States v. Hall*, 5 Cir. 1976, 525 F.2d 1254; *United States v. Marionneaux*, 5 Cir. 1975, 514 F.2d 1244, 1249; *United States v. Brasseaux*, 5 Cir. 1975, 509 F.2d 157, 161 n. 5. As those cases established, the government still bears the burden of proving each and every element of the conspiracy charge beyond a reasonable doubt.

Once the jury has reached a verdict of guilty, assuming that the trial judge properly submitted the case to the jury, the task on appeal is somewhat different. Loose recitation of formulae will not suffice, for it is our duty to review the cold record before us and to sustain the verdict of the jury "if there is *substantial evidence*, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (emphasis added).

In sum, I believe that the law of this Circuit *is* (and if not, ought to be) that the conspiracy conviction of any individual defendant may be sustained only if the record reveals substantial evidence of the defendant's knowledge of the existence of the conspiracy and of his participation in that conspiracy. Judge Rubin has authorized me to state that he joins in this concurring opinion insofar as it urges re-evaluation of the "slight evidence" formulation.

## II.

The "substantial evidence" test on the point under discussion is mandated by decisions of the Supreme Court. No decision of the Supreme Court has ever tested the sufficiency of the evidence to support a jury verdict in a conspiracy case by the "slight evidence" standard. Instead, its decisions have consistently employed the "substantial evidence" rule.

"The gist of the offense of conspiracy . . . is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy. Those having no knowledge of the conspiracy are not conspirators, . . . ." *United States v. Falcone*, 311 U.S. 205, 210, 61 S.Ct. 204, 207, 85 L.Ed. 128 (1940) (citations omitted).

[I]ntent, when given effect by overt act, is the gist of conspiracy. While it is not identical with mere knowledge that another purposes unlawful action, it is not unrelated to such knowledge. Without the knowledge, the intent cannot exist. Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal. This, because charges of conspiracy are not to be made out by piling inference upon inference, thus fashioning . . . a dragnet to draw in all substantive crimes.

*Direct Sales v. United States*, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943) (citations omitted). *Accord, Ingram v. United States*, 360 U.S. 672, 677–80, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959).

Thus, there must be an agreement, a conspiracy, and an individual defendant must have knowledge of the conspiracy and an intent to join, or associate himself with the objectives of, that conspiracy. Moreover, "conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself." *Ingram v. United States*, 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959).

If knowledge, participation and criminal intent are the elements of the crime of conspiracy, there can be no doubt that the government must prove each of these elements beyond a reasonable doubt. *Patterson v. New York*, 432 U.S. 197, 204–216, 97 S.Ct. 2319, 2324–30, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *United States v. Salinas-Salinas*, 5 Cir. 1977, 555 F.2d 470, 473.

On appellate review of a conspiracy conviction,

[i]t is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is *substantial* evidence, taking the view most favorable to the Government, to support it. Participation in a criminal conspiracy need not be proved by direct evidence; a common

purpose and plan may be inferred from a 'development and a collocation of circumstances'.

*Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (emphasis added and citation omitted).

As recently as 1974 the Supreme Court has reaffirmed the substantial evidence rule announced in *Glasser.* In *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590, the Court said,

> The general rule of application is that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it". (citing *Glasser*).

### III.

Judge Learned Hand once felt justified in describing a conspiracy prosecution as "that darling of the modern prosecutor's nursery", *Harrison v. United States,* 2 Cir. 1925, 7 F.2d 259, 263.

The disadvantages which every defendant faces in a criminal trial are, as a rule, highly intensified in a trial for conspiracy.

The courts, first, and then the Congress have created an exception to the hearsay rule which admits a statement of a co-conspirator during the course and in furtherance of the conspiracy. *See* IV J. Wigmore, Evidence § 1079 (J. Chadbourne ed. 1972); Fed.R.Evid. 801(d)(2)(E). Such statements are calculated to have an enormous impact on juries in conspiracy trials, and the necessity for proper judicial control of such hearsay testimony led this Court to order, *sua sponte,* that the case of *United States v. James,* 5 Cir. 1978, 576 F.2d 1121, be reheard en banc in order to decide what procedures should be employed by a trial judge in admitting co-conspirator statements.

Since conspiracies, by definition, involve more than one person, joint trials are often conducted. Judges are generally reluctant to sever these trials, and individual defendants are placed in a precarious position from "guilt by association".

A conspiracy trial may take place in any district where any overt act is committed by any of the conspirators. This rule often forces defendants to defend themselves many hundreds, and sometimes even thousands, of miles away from home. As Mr. Justice Jackson once noted, this rule reduces to a "phantom" the right of an accused under the Sixth Amendment to trial "by an impartial jury of the State and district wherein the crime shall have been committed." *Krulewitch v. United States,* 336 U.S. 440, 452, 69 S.Ct. 716, 722, 93 L.Ed. 790 (1949) (Jackson, J., concurring).

Over my dissent, this Court has recently permitted the Government under a conspiracy indictment to try two defendants in Georgia when they had stolen automobiles in Illinois and sold them in Illinois without any knowledge that the vehicles would be placed in interstate commerce and without any knowledge that the vehicles would be transported to Georgia. *See United States v. Beil,* 5 Cir. 1978, 577 F.2d 1313.

In view of these factors, which are to be found only in conspiracy prosecutions, I cannot bring myself to believe that upon appellate review only "slight evidence" is required to connect a particular defendant with a conspiracy. "Substantial evidence" should be, and I believe is, the test. The courts should be free to say so. Yet, because of prior decisions which I believe to have been mistaken, my hands are tied. Only an *en banc* court, or the Supreme Court by a positively specific utterance, can untie them.

### CONCLUSION

It is not to be thought by what I have above written that the enforcement of the law against conspiracies is unimportant. Certainly, unlawful conspiracies should be prosecuted. The point is that when the sufficiency of the evidence is drawn into question the correct test should be applied.

### ON PETITIONS FOR REHEARING AND PETITIONS FOR REHEARING EN BANC

Before BROWN, Chief Judge, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk shall set a briefing schedule for the filing of supplemental briefs.